**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry Stephen WHITMAN, Defendant-Appellant.**

No. 72–1535.

United States Court of Appeals, Sixth Circuit.

Argued April 10, 1973.

Decided June 26, 1973.

---

William H. Ortwein (court appointed) Chattanooga, Tenn., for appellant; Robert H. Feeney, Chattanooga, Tenn., on brief.

W. Lloyd Stanley, Jr., Asst. U. S. Atty., for appellee; John L. Bowers, Jr., U. S. Atty., E. D. Tenn., on brief.

Before EDWARDS and CELEBREZZE, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Larry Stephen Whitman appeals from conviction, under a two-count indictment, each of which charged him with knowingly harboring and concealing a person traveling in interstate commerce to avoid arrest for a federal crime. Title 18 U.S.C. § 1071. He was convicted upon jury trial had in the United States District Court for the Eastern District of Tennessee, Southern Division. He was sentenced to three years imprisonment on each count, such sentences to run concurrently.

He asks reversal upon the following grounds: (1) double jeopardy; (2) insufficiency of the evidence; (3) improper cross-examination by the United States Attorney of a witness called by the prosecution; and (4) refusal to give a proffered instruction, requested by appellant.[1]

We affirm as to Count I and reverse as to Count II.

### 1. Double jeopardy.

One day prior to the first date set for trial, November 24, 1971, the United States Attorney sought to obtain handwriting exemplars from appellant. Such request was refused and the government filed a motion asking the District Judge to compel appellant to supply such exemplars. On the morning of the day set for trial, a jury was selected but was excused *before being sworn* to provide the judge an opportunity to consider the government's motion. The motion was granted, but appellant persisted in his refusal. The District Judge found appellant in contempt, but continued the case for two days to provide appellant opportunity to purge himself of such contempt. His refusal continued and the District Judge thereupon dismissed the then selected jury and continued the cause to a later date. When the case again came on for trial, February 28, 1972, appellant moved for dismissal, asserting that he had been placed in jeopardy when the first jury, selected in November, 1971, was excused. His motion was denied.

When appellant's appeal first came on for hearing before this Court, it was asserted that the *first jury had been sworn*. The government did not then make an issue of this point. Thereupon, a panel of this Court, upon the assumption that the first selected jury *had been sworn*, held that appellant's plea of dou-

---

1. Two other issues were presented relating to Count II. Since we reverse as to Count II, we find it unnecessary to discuss these issues.

ble jeopardy should be sustained, 473 F. 2d 910. We reversed and remanded for dismissal of the prosecution upon our then view that Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), required such ruling. Our order recited that at the earlier trial, "a jury was selected and sworn." Thereafter, the government moved for a rehearing, asserting that the first selected jury had *not* been sworn. Such assertion was supported by relevant affidavits and transcript excerpts. With this showing, our first order was vacated and a rehearing directed. Upon such rehearing, the veracity of the government's claim that the first jury was not sworn was not challenged. Our own examination of the material now available persuades us that the first jury was not sworn. Downum v. United States, *supra,* is therefore not relevant to our decision. We conclude that appellant was not placed in jeopardy during the earlier November proceedings.

### 2. Sufficiency of the evidence.

The activities to apprehend the two fugitives named in Counts I and II of the indictment began when government agents conducted a raid on a house trailer then located in a rural area of Madison County, Alabama. This was in May, 1971. The fugitives, however, were not there found, the trailer was then occupied by appellant Whitman and two female companions. The government agents advised Whitman that they were looking for the fugitives, Larry Edward Hacker and Michael Joseph Famiglietti, later identified in Counts I and II of the Whitman indictment. Whitman was shown pictures of them and advised of the crime that would be involved in harboring them. He denied knowing them or their whereabouts. He said he did not recognize their pictures as men that he had ever seen before. At the mentioned time and location, appellant was driving a 1970 Grand Prix Pontiac automobile with a black vinyl top over a maroon body. This vehicle had Alabama license plates on it which were registered in the name of appellant Whitman. The record also shows that Whitman was then operating a 1965 Blue Comet automobile.

Between July 13 and July 19, 1971, an individual using the name John R. Stevens rented cabins 15 and 10 at Loret Villa, a lake resort in the Chattanooga, Tennessee, area. There was evidence that the John R. Stevens who rented the mentioned cabins was, in fact the appellant, Larry Stephen Whitman, and the two cabins remained registered to, and presumably in the custody of, appellant until their occupants were checked out on July 20. Both of Whitman's automobiles were parked at the Loret Villa and there was evidence that the fugitive named in Count I was also in the area of cabin 15, rented to appellant. We are satisfied that viewing the evidence and permissible inferences drawn therefrom in the light most favorable to the government, the issue of appellant's guilt under Count I was properly submitted to the jury. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

There was evidence that a young woman had, in Alabama, joined the fugitive Famiglietti, identified in Count II, sometime in May, 1971, and had gone on a long automobile journey with him. This journey included a stop in Detroit, where Famiglietti purchased a used *yellow* Cadillac automobile. The young lady said that on her trip she and Famiglietti stopped at a lake resort in the Chattanooga area. She did not, however, identify the place as Loret Villa where appellant was the host in cabins 15 and 10. There was evidence that within the period of time of appellant's activities at Loret Villa, Famiglietti was shot and killed and that this event did occur within the environs of Chattanooga. There was evidence that a *white* Cadillac, with Michigan temporary license tags, was seen at Loret Villa during the relevant period of time. However easily a sophisticated inference could be drawn that this was the fugitive's *yellow* Cadillac, without more it

would not add up to proof that Familglietti was at Loret Villa. We are of the view that there was not sufficient evidence to submit appellant's charged guilt under Count II for resolution by the jury.

### 3. Improper cross-examination.

 The charged improper cross-examination by the government attorney had to do with a statement given to the FBI by the young lady who had been the traveling companion of the fugitive Famiglietti before his death. Our acquittal of appellant under Count II obviates extensive discussion of this assignment. We are of the view, however, that allowance of the criticized cross-examination was within the discretion of the District Judge, and that no prejudice was visited upon appellant by it. The young lady's total loss of recollection of important events which were within her own knowledge suggested the need to refresh her recollection by her statement to the FBI. United States v. Cranson, 453 F. 2d 123 (4th Cir. 1971).

### 4. The instructions.

Error is charged in the refusal of the District Judge to give the following instruction.

"Ladies and gentlemen of the jury, I further instruct you that the words 'harbor' and 'conceal' as used in the statute must be construed narrowly and do not include all forms of assistance. That statute relating to harboring and concealing a person from arrest prescribes acts calculated to obstruct efforts of the parties to affect arrest of fugitives, but it does not impose a duty on one who may be aware of the whereabouts of a fugitive, although having played no part in his plight, (sic) to reveal this information on pain of criminal prosecution."

Appellant's address to us says that, "[t]he Court merely instructed the jury * * * by reading the Statute * * *." The District Judge, however, instructed the jury,

"The word 'harbor' as used in the statute, and used in the indictment, means to lodge or to aid or to care for one who is secreting himself from the processes of the law.

"The word 'conceal,' as used in the statute and in the indictment, means to hide or to secrete or to keep out of sight or to aid in preventing the discovery of one who is secreting himself from the processes of the law."

 The refused instruction was argumentative and, in part, had to do with a factual situation not relied upon by the government. We find no fault in refusal of the instruction.

We affirm the conviction under Count I. We reverse as to Count II and direct entry of a judgment of acquittal as to it.