**UNITED STATES of America, Appellant,**

v.

**James F. WEDALOWSKI, Appellee.**

**No. 532, Docket 77–1406.**

United States Court of Appeals, Second Circuit.

Submitted Jan. 12, 1978.

Decided March 6, 1978.

Oakes, Circuit Judge, filed a concurring opinion.

Richard J. Arcara, U. S. Atty. for the Western District of New York, Buffalo, N. Y. (James A. Fronk, Asst. U. S. Atty., Buffalo, N. Y., of counsel), for appellant.

Salten Rodenberg, Buffalo, N. Y., for appellee.

Before FEINBERG and OAKES, Circuit Judges, and WYATT, Senior District Judge.*

WYATT, District Judge:

On this appeal, the question is whether the district judge (Elfvin, J.) was correct in determining, after careful consideration, that the government was not ready for trial within the time required by the rules then applicable in the Western District of New York. On the basis of that determination, the indictment was dismissed by oral order in open court on July 27, 1977. A written judgment of dismissal was filed on August 11, 1977. The government took this appeal from the July 27, 1977 order (18 U.S.C. § 3731).

We find that the determination of the District Court was not correct; we must therefore reverse and direct that the indictment be reinstated.

### 1.

In the early hours of Monday, June 2, 1975, a bank in Niagara, New York (a town near Buffalo) was broken into by a person or persons evidently intent on burglary. The entry, or activity after entry, set off an alarm which alerted the police who broadcast by radio the location of the threatened bank. Whoever was in the bank must have been scared off by a ringing alarm. A police officer arrived quickly at the bank, heard an alarm ringing, and found that a rear door of the bank had been pried open, but no one was there. Inside the bank building, in the night deposit room, the officer found (among other things) a red welding tank (acetylene), a green welding tank, a welding torch tip, a welder's glove, and a green garden hose. There was a great deal of water on the floor in front of the safe in the night deposit room. There was a hole in the corner of the safe. It is a reasonable inference that when the alarm went off, the burglars fled the scene, leaving behind some of the equipment with which they had hoped to open the safe.

Within half an hour from the first alarm, defendant Wedalowski was seen by another officer walking south on a road about 500 to 600 feet north of the bank. It was the same road on which the bank was located. Defendant was stopped; he identified himself. His boots were wet; his pants legs were soaked with water up to the knees; his belt buckle seemed to have red paint on it similar to that on the red welding tank left in the night deposit room at the bank; there were burn marks on his jacket.

Later, but still very early in that morning, an officer saw an automobile parked about half a block south of the bank. The license number was checked with the Department of Motor Vehicles; it was registered to defendant.

Defendant was arrested on June 2, 1975; at what time on that day and under what circumstances he was arrested do not appear in the record.

### 2.

The provisions which required the government to be ready for trial within a fixed period are found in the "Plan for Achieving Prompt Disposition of Criminal Cases" adopted by the judges in the Western District of New York, effective April 1, 1973. These provisions, in relevant part, are as follows:

4. . . .

"In all cases the government must be ready for trial within six months from the date of the arrest. . . . If the government is not ready for trial within such time, and if the defendant is charged only with noncapital offenses, the defendant may move in writing, on at least ten days' notice to the government, for dismissal of the indictment. Any such motion shall be decided with utmost promptness. If it should appear that sufficient grounds existed for tolling any portion of the six-months period under one or more of the exceptions in Rule 5, the motion shall be denied, whether or not the government has previously re-

---

* Senior District Judge for the Southern District of New York, sitting by designation.

quested a continuance. Otherwise the court shall enter an order dismissing the indictment with prejudice unless the court finds that the government's neglect is excusable, in which event the dismissal shall not be effective if the government is ready to proceed to trial within ten days.

5. Excluded Periods.

In computing the time within which the government should be ready for trial under Rules 3 and 4, the following periods should be excluded:

(a) The period of delay during which proceedings concerning the defendant are pending, including but not limited to proceedings for the determination of competency and the period during which he is incompetent to stand trial, pre-trial motions, interlocutory appeals, trial on other charges, and the period during which such matters are sub judice.

(b) Periods of delay resulting from a continuance granted by the District Court at the request of, or with the consent of, the defendant or his counsel, in writing or stated upon the record. . . .

(c) The period of time during which:

.    .    .    .    .

(ii) the prosecuting attorney is actively preparing the government's case for trial and additional time is justified by exceptional circumstances of the case.

.    .    .    .    .

(h) Other period of delay occasioned by exceptional circumstances."

There was a new Plan adopted in the Western District effective July 1, 1976. It is undisputed, however, that neither this new Plan nor the Speedy Trial Act (18 U.S.C. §§ 3161 and following) is applicable or relevant to the case at bar.

### 3.

On June 2, 1975, a complaint was duly filed charging defendant with a violation of 18 U.S.C. § 2113(b). Defendant retained as his counsel Salten Rodenberg, Esq., who has represented him at all relevant times. On the same day—June 2, 1975—defendant was arraigned before a magistrate and released on a $5000 unsecured bond.

On June 10, there was a preliminary examination. Probable cause was found and defendant was held on the same bond to answer in the district court.

On November 12, a grand jury returned a one count indictment charging defendant with entering the bank with intent to commit a felony or larceny therein (18 U.S.C. § 2113(a)).

On the same day, a notice of arraignment for November 18, was mailed to defense counsel. This notice is on an official printed district court form (App. 7) which calls for the notice to be signed in the name of the Clerk of the District Court by a Deputy Clerk. The form in this instance was signed for the Clerk by an Assistant United States Attorney.

On the next day—November 13—a second notice of arraignment was mailed, fixing the date of arraignment as November 25, a postponement of seven days. The second notice carries a notation: "Confirming telephone conversation this notice supersedes previous notice". The second notice was also signed in the name of the Clerk by an Assistant United States Attorney and was addressed to Mr. Rodenberg, who had evidently asked the Assistant United States Attorney for a week's extension.

On November 18, a notation was made in the criminal docket that the arraignment had been adjourned to November 25 at the request of defense counsel.

On November 25, defendant was arraigned on the indictment before a magistrate. His plea was not guilty. The magistrate made a written order that motions must be filed by December 8, that the government must respond by December 12, and that argument on motions was to take place on December 16. It was stated in the order that if no motions were filed by December 8, discovery would then be deemed complete.

No motions for defendant were filed by December 8.

Under date of December 9, 1975, the Assistant United States Attorney wrote to defense counsel, sending to him a copy of a motion by the government which had been filed in the Clerk's Office, and in which the government announced its readiness for trial and moved the indictment for trial.

The Clerk's docket shows that the notice of readiness for trial and the motion for trial were filed on December 10, 1975. The parties have properly taken this as establishing the date on which the government was ready for trial, within the meaning of the then Western District Plan.

### 4.

On January 19, 1976, a motion was filed for defendant to suppress as evidence material seized from defendant's automobile in the execution of a search warrant. The return day of the motion was January 26, 1976.

Under date of January 27, 1976, the Clerk of the Court mailed a calendar adjournment notice to counsel on both sides. This notice stated that the indictment was set for calendar call on February 9 on the motion of defendant to suppress evidence and to set a date for trial, the adjournment from the January 26 return being at the request of defendant, approved by the Court (App. 12).

On February 9, 1976, the motion of defendant to suppress was argued and decision was reserved. No date for trial was set.

Under date of June 16, the Assistant United States Attorney wrote to defense counsel asking for hair samples of defendant for analysis and stating that "a trial date may be near."

Under date of September 24, the Assistant United States Attorney wrote to defense counsel sending a laboratory report on hair sample analysis, referring to four earlier laboratory reports turned over to defense counsel, and advising that "the Government is ready for trial".

Under date of October 4, the Assistant United States Attorney wrote to defense counsel, reminding that no trial date had been set, and asking about any possible alibi defense.

Under date of January 19, 1977, the Assistant United States Attorney wrote to defense counsel asking, among other things, if defendant was available for trial so that the government could move Judge Elfvin for a trial since "the government remains ready for trial".

Under date of April 11, 1977, the Assistant United States Attorney wrote to defense counsel asking about the physical condition of defendant and stating: "We remain ready for trial".

On May 18, 1977, between fifteen and sixteen months after the matter had been taken under advisement, Judge Elfvin filed an opinion and order denying the motion by defendant to suppress but granting his alternative prayer for a hearing. On May 31, Judge Elfvin tried to set a date for such hearing, but because defense counsel was away for a medical examination, Judge Elfvin felt obligated to adjourn the matter to June 6.

On June 6, the hearing was scheduled for June 20.

On June 20, the hearing on the motion to suppress was held.

On July 7, Judge Elfvin filed his findings and an order denying the motion to suppress.

On July 11, Judge Elfvin set the indictment for trial on July 26, 1977.

On July 11, a motion was made for defendant to dismiss the indictment for failure of the government to be ready for trial as required by the old Western District Plan and also for violation of the defendant's Sixth Amendment right to a speedy trial. The return day of this motion was July 25, the day before the date set for trial. The chronology strongly suggests that the motion to dismiss was a reaction by defense counsel to the setting of the indictment for trial.

On July 25, the motion to dismiss was argued. Decision was reserved, Judge Elfvin stating that the precedents cited by the

parties would be studied and, if they did not mandate dismissal, it was his intention to select a jury on the following day, to begin taking evidence, to watch during the trial to see if any prejudice to defendant by the delay were indicated and, if so, to consider that fact in ruling on the motion to dismiss. We are advised by counsel that the government objected to the selection of a jury before the motion had been decided and suggested that, if selected, the jury should not be sworn until decision of the motion.

The stenographic transcript for July 26, 1977 (obtained by us from the court reporter) confirms the recollection of counsel that on that day a jury was selected but was not sworn. After its selection the jury was excused until the next morning.

On the next morning (July 27), argument of the motion to dismiss was renewed, out of the presence of the jury. Judge Elfvin concluded that the motion should be granted. He ordered the indictment dismissed. The jury was called in, an explanation of the situation was made, and the jury was excused.

The government then took this appeal.

5.

■ Before reaching the merits here, we must be sure that this Court has jurisdiction of the government's appeal. The provision for appeals by the United States in criminal cases is 18 U.S.C. § 3731. In relevant part, this section states that no appeal by the United States "shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution".

As shown in the chronological history, a jury was selected for the trial of the indictment but was never sworn as a jury for the trial; it was excused after the motion to dismiss had been granted.

Does jeopardy attach when the jury is selected or only when it is sworn for the trial? The precedents are virtually unanimous in holding that jeopardy attaches when the jury is sworn, not when it is selected.

The process of obtaining a jury for a trial begins with the summoning of a jury panel, a group of persons from which the trial jury is selected. When this group has assembled in the court room an oath is administered to all members that they will answer truthfully all questions concerning their qualifications as trial jurors. This oath is often called the "voir dire" oath. A jury is then selected from the group. Before the trial proper begins, an oath is administered to the jurors selected for the trial that they will truly weigh the evidence and a true verdict render according to the evidence. This may be called the trial jury oath, to distinguish it from the voir dire oath.

■ The Supreme Court has flatly stated (Serfass v. United States, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975):

"In the case of a jury trial, jeopardy attaches when a jury is empaneled *and sworn*. *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In a nonjury trial, jeopardy attaches when the court begins to hear evidence. *McCarthy v. Zerbst*, 85 F.2d 640, 642 (CA10 1936). See *Wade v. Hunter*, 336 U.S. 684, 688, 69 S.Ct. 834, 93 L.Ed. 974 (1949)." (emphasis supplied)

The word "empaneled" is here used as a synonym for "selected", as distinguished from "sworn". See 1 Bouvier's Law Dictionary (Rawle revision, 8th ed.) 1507. In the Supreme Court's statement, the word "sworn" refers, of course, to the trial jury oath and not to the voir dire oath.

Before the statement in *Serfass*, Courts of Appeals in two circuits had decided that jeopardy attached when the trial jury was sworn, not when selected. *Alexander v. Fogliani*, 375 F.2d 733, 734 (9th Cir. 1967); *United States v. Whitman*, 480 F.2d 1028, 1029–30 (6th Cir.), cert. denied 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973).

After the statement in *Serfass*, Courts of Appeals in two other circuits accepted that statement as authority that jeopardy did not attach until the time when a jury was

*sworn* to try the case; and that no jeopardy attached if a jury were selected for a criminal trial but was excused *before* being sworn. *United States v. Green*, 181 U.S. App.D.C. 194, 556 F.2d 71 (1977); *United States v. Gates*, 557 F.2d 1086, 1088–89 (5th Cir. 1977). After quoting the statement of the Supreme Court in *Serfass* to which we have already referred, the Court of Appeals for the District of Columbia in *Green* explained the matter as follows (181 U.S.App. D.C. at 195, 556 F.2d at 72):

> "We think the quoted language clearly refers to a jury sworn to try the case rather than to a panel sworn only for voir dire. As the Supreme Court has noted, a defendant is not placed in jeopardy until he is subjected to the risk of being convicted. . . . That risk cannot arise until a jury has been sworn to try the case; until that moment, a defendant is subject to no jeopardy, for the twelve individuals in the box have no power to convict him."

It thus seems clear that in the case at bar, the jury never having been sworn to try this indictment, jeopardy never attached, retrial of defendant is not prohibited by the Sixth Amendment, and this Court has jurisdiction of the government's appeal.

### 6.

■ The time between June 2, 1975 (when defendant was arrested) and December 10, 1975 (when the government was ready for trial) is six months and eight days.

The issue on this appeal is whether there are time periods which should be excluded under the then Western District Plan so that, after any such exclusion or exclusions, the government was ready for trial within six months of the date of the arrest of defendant.

### 7.

We believe that in this case there are "exceptional circumstances" which under Rule 5(h) of the then applicable Plan require exclusion of the eight days (or an even greater number of days) by which the government's readiness for trial exceeded the six months limit.

True, the government did not move, before the end of the six month period, for any extension or continuance beyond that period. But it has been decided that no such motion is necessary for the application of Rule 5(h). *United States v. Rollins*, 475 F.2d 1108, 1110 (2d Cir. 1973) (Kaufman, J.; "Rollins I").

The "exceptional circumstances" here present are principally that there were no witnesses to anything done by the burglars at the bank; and that to connect defendant to the events there required scientific laboratory analysis of paint, clothing, fibers from clothing, hair, soil and the like so as to show that such objects found at the scene in the bank match similar objects on the person of defendant. This laboratory testing was done by the FBI and the results were not obtained by the government until late September, 1975 (App. 57–59). This delayed the presentation of the matter to a grand jury. The indictment was returned November 12, 1975, and the government was ready for trial within less than a month following the indictment. No prejudice to defendant by reason of any delay was shown or claimed. These circumstances in our view are "exceptional". "In determining whether facts present circumstances exceptional enough to merit an extension of time, the public interest in prompt adjudication must be balanced against competing interests". *United States v. Rollins*, 487 F.2d 409, 413–14 (2d Cir. 1973) (Oakes, J.; "Rollins II").

The only argument in response for defendant is that "the factual record below does not justify this claim" (Brief for Appellee, p. 10). This is said to be because the "factual record" was the argument of an Assistant United States Attorney rather than an affidavit. But no such objection was made below when an affidavit could easily have been secured; indeed, the factual statements in argument of the Assistant United States Attorney appear to have been accepted as true. Counsel for defendant told the District Court (App. 69, 70):

"Now, we know that in cases such as this where time is consumed by forwarding the material to the Federal—to the FBI, that type of thing, that in all likelihood the Government couldn't be ready before September, but that was only ninety days from the date of arrest. I don't think the Government, sir, should be able to come in here at this time and say, "Well, the scientific experiments held us up", when it's obvious though we have no factual—formal factual testimony here as to this except that Mr. Frank is making certain claims and I'm making certain claims, but it's obvious that they were through in September. Now, that can't come in within any exception."

In any event, the argument now made for defendant is without merit. The necessity for laboratory tests as proof of the government's case seems obvious on the face of the situation; only circumstantial evidence can connect defendant with the offense charged.

Because of the "exceptional circumstances", the District Court should have excluded a period of eight days or longer and should have denied the motion to dismiss the indictment.

### 8.

■ There are periods of time which aggregate eight days and are excludable under other parts of the Rules then in effect. The one day required for the preliminary examination should be excluded under Rule 5(a) as one of the "proceedings concerning the defendant." The seven-day period from November 18, 1975 to November 25, 1975 should be excluded under Rule 5(b) because it is "a continuance granted by the District Court at the request of . . . the defendant or his counsel, in writing or stated upon the record." It is argued for defendant (and apparently was believed by Judge Elfvin) that the continuance was granted by the United States Attorney and not by the District Court. It is said that the United States Attorney determines the date of arraignment and then advises the District Court of his determination. This is

an error. It is the Court which determines its own calendars, including when a defendant will be arraigned before the Court. The form of notice of arraignment (App. 7, 8) shows its issuance from the Court. It may be that in the Western District of New York an Assistant United States Attorney sometimes signs such notice for the Clerk and mails it out. We do not approve of such practice, if it existed, or of any practice appearing to allow one party, here the government, to grant a "continuance" which in theory and in fact must come from the Court. In the case at bar, when the Assistant United States Attorney signed and sent out the second notice adjourning the arraignment (App. 8), he was not acting on his own authority but rather on behalf of the Court and on its authority.

### 9.

■ No claim is, or could be, made that the delay between indictment and trial violated the Sixth Amendment right of defendant to a "speedy" trial. No prejudice to the defendant from such delay was shown nor was prejudice claimed (App. 25, 37, 38, 47, 104; Brief for Appellee, p. 4). No demand for a trial was ever made by defendant. The time between the date of indictment and the date set for trial was between twenty and twenty-one months. The reason for this delay was principally the time required (between fifteen and sixteen months) for decision of the motion to suppress made by the defendant. The government did everything it could to secure a trial; there was certainly no attempt by the government to delay the trial nor any suggestion of bad faith on the part of the government. Consideration of the four factors identified by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1970) thus establishes that there would have been no violation of the Sixth Amendment if the indictment had been tried on the day set for trial (July 26, 1977).

The order and judgment dismissing the indictment are reversed and the cause remanded to the District Court with the direction that the indictment be reinstated.

OAKES, Circuit Judge (concurring):

I agree with everything that Judge Wyatt says in Parts 1 through 6 and Part 8 of his opinion, and therefore agree that the judgment should be reversed and the indictment reinstated. I would not reach the question discussed in Part 7 of Judge Wyatt's opinion whether there are "exceptional circumstances" under Rule 5(h) of the Western District Plan, since the excludable periods of time referred to in Part 8 are sufficient to require reversal. Moreover, I am concerned about the state of the factual record below as to the excludability of time necessary for the Government's making scientific laboratory analysis, particularly since it does not appear that the Government moved to have this time excluded as the analysis was being made or took any other steps to protect itself. Since it seems to me this case could have some implications in respect to the operation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, I would not reach a question which it seems to me the record does not require us to reach.