**UNITED STATES of America, Appellee,**

v.

**Mildred CARRASQUILLO, Appellant.**

No. 81–1154.

United States Court of Appeals,
Third Circuit.

Argued July 16, 1981.

Decided Dec. 17, 1981.

As Amended March 31, 1982.

Joseph M. Miller (argued), Asst. Defender, Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellant.

Peter F. Vaira, Jr., U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, William B. Carr, Jr. (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

### OPINION OF THE COURT

SEITZ, Chief Judge.

After entering a conditional guilty plea to two counts of a criminal indictment, Mildred Carrasquillo appealed the district court's denial of her motion to dismiss the indictment. *See United States v. Zudick,* 523 F.2d 848 (3d Cir. 1975). This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

On July 23, 1980, Mildred Carrasquillo was arrested, and she made her initial appearance before a magistrate that same day. A grand jury returned an indictment on August 5. Carrasquillo was arraigned on August 21, at which time she entered a plea of not guilty.

In September, Carrasquillo's attorney, Joseph Miller, and the deputy clerk of the district court discussed trial scheduling. Miller indicated that he had two upcoming court appearances; the district court later determined that it was a result of this discussion that trial had not been immediately scheduled. No trial date was set at that time. In fact, this case was not listed for trial prior to October 28, the day Carrasquillo filed a motion to dismiss the indictment, alleging a violation of the Speedy Trial Act of 1974, 18 U.S.C. § 3161(c)(1) (1976 & Supp. III 1979). She argued that her trial should have commenced on or before October 14, 1980, seventy days from the date of her August 5 indictment.

After a hearing, however, the district court ruled that the date of arraignment, August 21, was the relevant date from which to calculate the seventy-day period. The court then determined that the case was outside the limits of the Act by only one day. Because Carrasquillo's attorney had been unavailable during part of the seventy-one days from arraignment to filing of the motion, the court found that there was a basis for at least a one-day exclusion of time in computing the statutory limit. The court therefore denied Carrasquillo's motion to dismiss the indictment, and Carrasquillo entered her conditional plea of guilty and filed an appeal in this court.

### II.

We first consider whether the district court erred in calculating the seventy-day period from the date of arraignment. Although the Government concedes that the period should be calculated from the date of indictment, we are not bound by that concession, and we proceed to examine the issue independently. *See United States v. Gaskins,* 485 F.2d 1046, 1047 (D.C.Cir.1973) (per curiam).

The relevant statute, 18 U.S.C. § 3161(c)(1), states:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment

with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

Carrasquillo contends that "the date the defendant has appeared before a judicial officer of the court in which such charge is pending" was July 23, when she made her initial appearance before a magistrate. She therefore argues that the date of her indictment was the "last occurring" date for purposes of calculating the seventy-day period before commencement of trial. The district court determined, however, that the date of Carrasquillo's arraignment was the date of her appearance for purposes of section 3161(c)(1).

■ If a preindictment initial appearance were not considered to be an "appearance before a judicial officer of the court in which such charge is pending," then the date of an indictment could never be the date that "last occurs" under section 3161(c)(1). Since this would make the choice of dates provided in section 3161(c)(1) superfluous, we believe that Congress must have intended that a preindictment appearance constitutes an "appearance before a judicial officer of the court in which such charge is pending." When such an appearance occurs, the subsequent filing of an information or indictment against the defendant triggers the seventy-day period during which trial must commence. When there is no such appearance because an information or indictment is the first step in a criminal case, then postindictment arraignment will be the relevant "last occurring" date. See Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, *Guidelines to the Administration of the Speedy Trial Act of 1974, As Amended*, at 7–8 (Dec. 1979 revision with Aug. 1981 amendments) [hereinafter Judicial Conference's *Guidelines*].

We believe that our interpretation is consistent with Congressional intent. Prior to 1979, the Act required that a defendant's arraignment occur within ten days of the filing of an information or indictment, and that trial commence within sixty days of arraignment. The section was amended for the purpose of "[m]erging the 10-day indictment-to-arraignment and the 60-day arraignment-to-trial time limits . . . into a single 70-day indictment-to-trial period." H.R.Rep.No.390, 96th Cong., 1st Sess. 1, *reprinted in* [1979] U.S.Code Cong. & Ad. News 805; *see* S.Rep.No.212, 96th Cong., 1st Sess. 31 (1979). Our interpretation of the Act coincides with the "overall" " '100-day time frame' " envisioned by Congress. *See* H.R.Rep.No. 390, *supra*, at 5 (quoting from a General Accounting Office study), [1979] U.S.Code Cong. & Ad.News 809. Under section 3161(b), an information or indictment must be filed within thirty days from the date of arrest or summons, and a "100-day time frame" results if indictment triggers the seventy-day period. *See* S.Rep. No.212, *supra*, at 32 (§ 3161(c) "merge[s] the second interval (indictment to trial) into the third interval (arraignment to trial). Thus, instead of 30–10–60 day intervals, the Act would operate on a 30–70 day (arrest to indictment, indictment to trial) basis.").

■ We hold, therefore, that the district court erred by calculating the statutory seventy-day period from the date of Carrasquillo's postindictment arraignment rather than from the date the indictment was filed.

### III.

Dismissal of an indictment is mandatory if the section 3161(c) time limits, as extended by section 3161(h), are not met. *See* 18 U.S.C. § 3162(a)(2) (1976). Subsection (h) permits certain periods of delay to be excluded when computing the time within which a trial must be commenced. The Government contends that no violation of the Act occurred because there was sufficient excludable time within the eighty-four

days from the filing of the indictment to the filing of the motion to dismiss.[1]

### A.

The district court found a sufficient basis for what it believed to be a necessary one-day exclusion because "the engagement of counsel is a valid reason for continuing the case." It determined on the basis of the somewhat conflicting recollections of the deputy clerk and attorney Miller that Miller had indicated his engagement in other trial matters during some of the indictment-to-trial period and that it was for this reason that the case was not earlier listed for trial.

The Government contends that the fourteen excludable days necessary to bring this case within the limits of the Speedy Trial Act may be found in the court's statement that there were "sufficient grounds for granting at least a one-day exclusion, probably a 10-day exclusion." The Government contends that ten trial days would consume fourteen calendar days and that the district court therefore found fourteen excludable days. However, we need not decide whether the district court's suggestion that there were "probably" grounds for a ten-day exclusion constitutes the necessary finding that fourteen days were excludable, because, as our subsequent analysis shows, the district court's procedures in this case preclude us from finding any excludable time.

### B.

■ While subsection (h)(3)(A) permits exclusion of "[a]ny period of delay resulting from the absence or unavailability of the defendant or an essential witness," it does not explicitly include the absence of a defendant's attorney. We believe, therefore, that exclusion for Miller's unavailability could only be accomplished through the granting of a continuance under the standards set forth in subsection (h)(8)(A).

Subsection (h)(8)(A) excludes from the computation of time within which the trial must commence:

Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

Subsection (h)(8)(B) contains a nonexclusive list of factors for the judge to consider in determining whether to grant a continuance under subsection (A).

The district court judge in this case did not grant any continuance prior to the expiration of the seventy-day period. Assuming, however, that the deputy clerk's discussion with Miller about the fixing of the trial date may be viewed as granting a continuance under section 3161(h)(8)(A), the Government's position, in light of our construction of the Act, still lacks merit. We think the statutory language strongly suggests that Congress intended the trial judge, not his deputy clerk, to decide whether to grant a continuance. Section 3161(h)(8)(A) refers to "a continuance granted by any judge on his own motion or at the request of" the attorneys; "finding[s]" set forth "in the record"; and "factors, among others, which a judge shall consider in determining whether to grant a continuance." The Act defines "the terms 'judge' or 'judicial officer' [t]o mean, unless otherwise indicated, any United States magistrate [and] Federal district judge." 18 U.S.C. § 3172(1) (1976). Significantly,

---

**1.** The period from filing of the motion to dismiss to its disposition was excludable under subsection (h)(1)(F).

the definition does not encompass persons acting on behalf of the court. *Cf.* 18 U.S.C. § 3170 (1976 & Supp. III 1979) (giving district court clerks a role and thus indicating that Congress distinguished between clerks and judges); H.R.Rep.No.1508, 93d Cong., 2d Sess. 22, *reprinted in* [1974] U.S.Code Cong. & Ad.News 7401, 7415 (same).[2]

Section 3161(h)(8)(A) requires that, before delay resulting from a continuance will be considered excludable, the judge must make findings that the ends of justice served by granting a continuance outweigh the best interests of the public and the defendant in a speedy trial. The Government points to *United States v. Edwards*, 627 F.2d 460 (D.C.Cir.) (per curiam), *cert. denied*, 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980), in support of the proposition that a court need not grant a continuance or place the reasons for granting a continuance on the record at the same time that the continuance is granted. *Edwards*, however, involved only the question whether the reasons for granting a continuance must be placed on the record at the same time that the continuance is granted. *See id.* at 461. *Edwards* does not stand for the proposition that, when a continuance is granted, no findings need to be made until after the statutory time limit has expired and the defendant has moved for dismissal. *See United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 375 (2d Cir. 1979) ("Nor, in the absence of findings by the court, can the exception of § 3161(h)(8)(A) be invoked to serve the 'ends of justice.' "). We believe that the period of delay involved in this case cannot fairly be said to be one "resulting from a continuance granted by" the district court, because the judge's characterization of the earlier action of the deputy clerk as constituting a continuance did not occur until after the statutory time limit had expired. *See United States v. LaCruz*, 441 F.Supp. 1261, 1264–65 (S.D.N.

Y.1977) (Act "certainly does not permit this court to grant a continuance *nunc pro tunc*").

The legislative history of section 3161(h)(8)(A) & (B) further supports our interpretation. When Congress was drafting the Act, the Advisory Committee on Federal Criminal Rules recognized that, in addition to the specific exclusions of § 3161(h)(1)–(7), a general catch-all provision would be necessary: "The exclusionary periods under section 3161(b) [now 3161(h)] are limited and not all-inclusive. When the Advisory Committee [on Federal Criminal Rules] attempted to enumerate the exclusions, we finally came to the conclusion that the 'good cause' avoidance of specific time limitations was the best that we could do." Letter to Rep. Mikva from Judge Walter E. Hoffman, August 25, 1970, *reprinted in Speedy Trial: Hearings on S. 895 Before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary*, 92d Cong., 1st Sess. 172 (1971) [hereinafter *1971 Senate Hearings*]. Early bills excluded antitrust, securities, and tax prosecutions from the time limits and excluded periods resulting from a continuance granted at the request of either party upon a showing of "good cause." *See* H.R. 7107, 92d Cong., 1st Sess. §§ 3161(b)–(6) & (7), 3163(b) (1971); S. 895, 92d Cong., 1st Sess. §§ 3161(c)(6), (7) & (8), 3163(b) (1971). In addition, the Senate bill would have required the court to set forth in writing its reason for granting a continuance.

The changes reflected in the present statute indicate Congress' recognition that, although courts need some flexibility, any general language might create an exception that swallows the rule. For example, in regard to the bill's writing requirement, Chief Judge Albert Lee Stephens, Jr., said:

I submit that .... the Federal courts [should] accept, as a finding in writing, a transcript of a proceeding wherein a

---

**2.** Under 18 U.S.C. § 3161(a) (1976), the judge, "at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list for trial on a [calendar] so as to assure a speedy trial."

We note that the routine nature of setting trial dates and the balancing required in granting continuances may suggest that the situations are distinguishable and that a judge's actual involvement is critical under the Act only in granting continuances.

judge, from the bench, has expressed his reasons, his findings, and made a record of them that is later typed up. So, I would think that if he makes his findings in the record and they are available in writing as a transcript of the proceedings, it should be sufficient. We may have electronic recording of testimony someday, and we do have it, or will have, with the magistrates now. So, I think we have to recognize that, and to force the judge with maybe 20 or 30 people or more before him in one morning to remember which ones he has granted a continuance to and for what reason is unduly taxing to the judge.

*1971 Senate Hearings, supra*, at 82–83. We do not believe that Congress, when it changed the writing requirement, intended to allow deputy clerks to decide whether to grant continuances or to postpone trials. Indeed, Congress relaxed the requirements on the assumption that only judges would make that decision.

Then-Assistant Attorney General William H. Rehnquist noted that the exceptions for antitrust, securities, and tax prosecutions might raise constitutional problems and suggested that, rather than attempting to specify the particular statute to which an exemption is to be applied, Congress should adopt a general exemption for cases of extraordinary complexity. See Letter to Senator Ervin (October 19, 1971), *reprinted in 1971 Senate Hearings, supra*, at 256. While the Senate took this advice, it made the requirements for granting a continuance more rigorous:

> The new provision eliminates the words "good cause" and simply adopts the stiffer "ends of justice" standard .... In essence, the new provision allows a judge to grant a continuance only where he finds that the "ends of justice" outweigh the best interest of the public and the best interest of the defendant in a speedy trial. This means that in each case where a continuance is requested, and the factual situation does not fall within 3161(h)(1) through (7), the judge must determine before granting the continuance that society's interest in meeting the "ends of

justice" outweighs the interest of the defendant and of society in achieving speedy trial.

S.Rep.No.1021, *supra*, at 39. We have serious doubts that Congress intended deputy clerks to make the difficult distinction between the "good cause" and the more rigorous "ends of justice" standards. Moreover, the use of deputy clerks to make such a determination presupposes that Congress intended continuances under section 3161(h)(8)(A) & (B) to be granted routinely. We believe that Congress intended otherwise.

> Although it is intended that continuances under 3161(h)(8) should be given only in unusual cases, it is anticipated that the provision will be necessary in many protracted and complicated Federal prosecutions, that is antitrust cases, and complicated organized crime conspiracy cases. However, the Committee has rejected a blanket exception for these cases and opted for a case-by-case approach .... Each time such a continuance is granted in a complicated case the judge will still have to weigh the right of society and the defendant to a speedy trial against the "ends of justice."
>
> ....
>
> [S]ubsection 3161(h)(8) has been redrafted to reflect the Committee's clear intention that the determination of whether or not to grant an exclusion is to be via a balancing test. Before establishing a special, more lenient set of limits, a court would have to determine that the "ends of justice" outweigh the defendant's and society's interest in speedy trial. Also, the section as amended by the Committee sets out, in the statutory language, the specific factors which a judge should consider when weighing these interests. This is designed to give the courts the maximum degree of guidance in interpreting this critical provision.
>
> ....
>
> However, as a general matter the Committee intends that, except for the above situations, this provision should be rarely used. Furthermore, even the above situ-

ations should be handled on a case-by-case basis with the court stating . . . the reasons why it believes that granting the continuance strikes the proper balance between the ends of justice on the one hand and the interest of society in a speedy trial and the interest of the defendant in a speedy trial on the other. *Id.* at 39–41. The delicacy and infrequent use of this balancing strongly suggest that Congress contemplated that only the trial judge would make this determination.

We cannot excuse a court practice that fails to comply with the language of the Act or to further its policies even though its objective is to keep a judge free of scheduling conflicts that result from overcrowded trial dockets. The House Committee on the Judiciary stated that section 3161(h)(8)

> provides that no continuance shall be granted for reasons of general court congestion, or lack of diligent preparation, or failure to obtain available witnesses on the part of the attorney for the Government. By approving this provision, the Committee intends to make it clear that the continuance provision should not be invoked for reasons other than those which would meet the ends of justice. The Committee can foresee instances in which institutional delay caused by any of these factors could result in what subsection 3161(h)(8)[(B)](i) terms a "miscarriage of justice." However, the nature of the concept of speedy trial is one which recognizes that institutional delays occasioned by poor administration and management can work to the detriment of the accused. Placing a prohibition on the granting of continuances for these reasons serves as an incentive to the courts and the Government to effectively utilize manpower and resources so that defendants may be tried within the time limits provided by the bill.
>
> [T]he Committee cannot foresee any excuses for institutional delay which would justify granting a continuance
> . . . .

H.R.Rep.No.1508, *supra,* at 33, [1974] U.S. Code Cong. & Ad.News 7426.

Then-Assistant Attorney General Rehnquist indicated that the Act is a "peremptory instruction to prosecutors, defense counsel and judges alike that criminal cases must be tried within a particular period of time." *Id.* at 20, [1974] U.S.Code Cong. & Ad.News 7414. Congress realized that good faith delay may undermine the integrity of the criminal justice system as much as deliberate abuse. It intended the firm time limits in the Act to shake the system "by the scruff of its neck." *Id.* As the House Committee on the Judiciary stated: "Federal judges must put their houses in order by beginning a thorough examination and evaluation of their problems to determine what is necessary to solve them." *Id.,* [1974] U.S.Code Cong. & Ad.News 7413. Congress' solution is clear: both the courts and the parties should move to trial expeditiously, and any delay must be justified on the record and only under carefully limited circumstances. We believe that the procedures employed in this case tend to encourage the very delay that Congress sought to avoid.

### C.

■ Even if Carrasquillo's defense counsel advised the deputy clerk of commitments through the remainder of the seventy-day period, his action does not waive the Act's protections. Section 3161(h) specifies eight periods of delay that are to be excluded in computing the time within which the defendant's trial must commence. We believe that the list is exclusive. There is nothing in the statute or in the legislative history to the contrary.

The Senate Committee on the Judiciary's report stated that the Act

> has carefully constructed exclusions and exceptions which permit normal pre-trial preparation in the ordinary noncomplex cases which represent the bulk of business in the Federal courts. . . . The bill also provides for unusual circumstances which may demand exceptions to the normal time limits. In order to avoid the pitfalls of unnecessary rigidity on the one hand, and a loop-hole which would nullify

the intent of the legislation on the other, a balancing test is established in order to enable the judge to determine when the "ends of justice" require an extraordinary suspension of the time limits.

S.Rep.No.1021, 93d Cong., 2d Sess. 21 (1974). In a letter to his colleagues, Senator Ervin, sponsor of the original Senate bill, S. 3936, 91st Cong., 2d Sess. (1970), stated: "Only delays required by concurrent proceedings or absolutely necessary to secure a fair trial are permitted under the bill." Letter to other senators (July 8, 1970), *reprinted in 1971 Senate Hearings, supra,* at 158. Representative Conyers argued in the House floor debates that "[t]he committee has very carefully structured into the bill nearly every conceivable type of unavoidable pretrial delay and excepted the periods of such delay from the running of the [statutory] period." 120 Cong.Rec. 41774 (1974). Representative Wiggins added: "These exclusions, contained in section 3161(h) of the bill, are reasonable and comprehensive." 120 Cong.Rec. 41778 (1974). The Senate Committee on the Judiciary emphasized its intent to provide automatic exclusions under only a few, enumerated circumstances in its 1979 report:

> [T]he Judicial Conference has recommended in the past that the Act be amended further to permit the defendant to waive the thirty-day minimum. While the Committee has received no formal legislative recommendation to permit waiver by the defendant of any part of the Act, it has found that some judges feel that the Act may be waived by defendant currently.

The sole reference to waiver in the Act appears in § 3162(a)(2), which states:

> * * * Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.

> The Committee wishes to state, in the strongest possible terms, that any construction which holds that any of the provisions of the Speedy Trial Act is waivable by the defendant, other than his statutorily-conferred right to move for dismissal as cited above, is contrary to legislative intent and subversive of its primary objective: protection of the societal interest in speedy disposition of criminal cases by preventing undue delay in bringing such cases to trial.

S.Rep.No.212, *supra,* at 28–29 (asterisks in original).[3]

Both the defendant and the public have an interest in a speedy criminal trial. In reporting favorably upon the Act, the House Committee on the Judiciary emphasized the importance of the public's interest, stating:

> The Committee believes that the right to a speedy trial belongs not only to the defendant, but to society as well. A defendant who is charged with a violation of the law becomes a burden to society in the sense that his status consumes the time and energy of all components of the criminal justice system with which he comes in contact: the police, magistrate, clerks of court, probation officers, judges and others.

---

**3.** The Judicial Conference's recently amended Speedy Trial Act guidelines confirm our reading of section 3161(h)(8):

> The Committee believes that this provision, considered in light of the legislative purpose underlying the Act, makes it clear that a defendant's proffer or willingness to "waive" his rights or agree to waive his rights under the Act cannot justify any deferral of the trial date beyond the statutory deadline that would otherwise apply. The legislative history of the Act evidences a clear intention on the part of the Congress to implement a societal interest in prompt criminal trials, as well as to recognize the interest that the

defendant may have in a speedy disposition. Section 3161(h)(8) accordingly imposes on the judge the obligation of protecting both the public and defense interests in prompt trials; it allows an extension of the otherwise applicable deadline only upon a judicial determination that certain considerations outweigh the interests of both the public and the defendant in prompt disposition. It would be inconsistent with the statutory scheme to permit a defendant, through a purported "waiver," to relieve the court of this obligation.

Judicial Conference's *Guidelines, supra,* at 55–56.

H.R.Rep.No.1508, *supra*, at 15, [1974] U.S. Code Cong. & Ad.News 7408. We do not think a defendant may waive the public's right to a speedy trial unless he complies with the requirements carefully set forth in section 3161(h). Alternative arrangements should be made only when the court specifically finds "that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." We do not find excludable time under a "waiver" theory. We believe that it is necessary to comply with the requirements of 18 U.S.C. § 3161(h)(8)(A) if a postponement of the trial is to toll the period within which a trial must be brought, and we have already concluded that the district court in this case did not comply with the provisions of the Act. Under section 3162(a)(2) as amended, dismissal of the indictment is mandatory.

### IV.

The Act provides that dismissal may be with or without prejudice, depending on factors such as the seriousness of the offense, the circumstances leading to dismissal, and the impact reprosecution would have on the administration of the Act and on the administration of justice. *See* 18 U.S.C. § 3162(a)(2). On remand, therefore, the district court should determine pursuant to the Act whether Carrasquillo's indictment should be dismissed with or without prejudice.

### V.

The order of the district court denying Carrasquillo's motion to dismiss will be reversed and the case remanded to the district court with directions that the court dismiss the indictment with or without prejudice, according to its findings under section 3162(a)(2) of the Act.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring.

The majority opinion in this case represents a thoughtful and thorough review of the policies and legislative history behind the Speedy Trial Act. I join fully in the majority's opinion and write only to express my views on the issue of waiver under the Speedy Trial Act as it is presented by the facts of this case.

### I.

Congress granted only a judge the power to make the "ends of justice" determinations necessary to justify a continuance which then tolls the Speedy Trial time periods. Section 3161(h)(8)(A) provides that time is excludable for "[a]ny period of delay resulting *from a continuance* granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government. . . ." (emphasis added). The Act, its policies and its legislative history leave no room for a court practice which delegates this function, either expressly or implicitly, to a deputy court clerk. The majority is correct when it writes, "[w]e cannot excuse a court practice that fails to comply with the language of the Act or to further its policies even though its objective is to keep a judge free of scheduling conflicts that result from overcrowded trial dockets." Majority Opinion, typescript at 10. Likewise, the majority is accurate in concluding that, because of the public's interest in speedy trials, the defendant may not waive the Act's provisions without first receiving a continuance from a judge. Majority Opinion, typescript at 14.

Nevertheless, I must note that it was in all probability the conduct of defendant's counsel which, even if unintentional, misled the deputy court clerk and now results in our dismissal of the indictment. One can infer that the sensitive deputy clerk was trying to be cooperative with counsel and to avoid a scheduling conflict. Perhaps a more callous clerk would have required counsel to appear before the judge and a court reporter to seek a continuance on the record. Instead the deputy clerk attempted to set a date convenient with the schedule of defense counsel.

The defendant, through her attorney, now argues that a dismissal of the indictment is mandatory because there was no formal continuance. Neither the defendant

nor the Government sought or received an explicit continuance by the judge and the deputy clerk did not insist on one. Rather, the deputy clerk contacted the attorney for Carrasquillo and attempted to set a timely trial date. It appears that defense counsel advised the deputy clerk of other commitments covering at least some portion of the seventy days.[1] The deputy clerk scheduled the trial for a date outside of seventy days on her understanding of Mr. Miller's schedule. Since no continuance was ever formally granted by the trial judge, the defendant contends that the delay in scheduling is not excludable under § 3161(h)(8)(A).

Because of the precise language of the Act and its undisputed legislative history, there is presently no option but to dismiss the indictment. For me this dismissal is somewhat unsettling because tragically it demonstrates that a thoughtful deputy clerk who tried to accommodate a lawyer's hectic schedule can herself become the "victim" when the very lawyer who got the time extension later repudiated her authority to grant that which she thought he had sought. There was a day in the not too distant past in our trial courts when deputy clerks and the trial bar perceived of their functions as a mutually cooperative relationship where the clerk attempted to aid (rather than to aggravate) the busy lawyer in resolving the conflicts caused by a lawyer being assigned to trial at the same time in different cases before different judges. This was done generally without tension or antagonism but instead it was particularly the tradition of the clerk's office in the Eastern District of Pennsylvania to be as cooperative as possible in aiding counsel. Perhaps the lesson of this case is that no longer can a clerk attempt to accommodate the trial bar without doing so at the clerk's and the court's peril. In criminal cases, the "good old days" of civility and mutual cooperation may be gone forever, and perhaps under the Speedy Trial Act the lawyer should always be viewed as a potential protagonist if the clerk tries to accommodate the lawyer's schedule conflicts.

I am certain that no one could have been more shocked with the motions to dismiss than the deputy clerk who tried to accommodate counsel's original request. I had always hoped that Leo Durocher's admonition that "nice guys always lose" was limited to the sport of baseball, but perhaps this case illustrates that when a "nice" deputy clerk tries to be thoughtful and accommodating he or she can unfortunately and unintentionally cause a case to be "lost" if there develops later even a *bona fide* dispute about the conversation or agreement between counsel and the deputy clerk. The statute gives no alternative, and only the defendant, whose lawyer speaks ambiguously, profits.

If the language of the Act and its legislative history were not so clear that the waiver doctrine does not apply, I would not hesitate to find a waiver under the facts as alleged in this case.[2]

---

1. The Government in its brief at 8–9 summarizes the recollections and discrepancies between the deputy clerk and Mr. Miller in the following chart:

| Deputy Clerk | Mr. Miller |
|---|---|
| Date of 1st conversation—Week of 9/15/80 | —Week of 9/29/80 |
| Substance of Mr. Miller's Statements—Carrasquillo may plead guilty, Miller unavailable for trial on 9/29/80 due to listing before Judge Shapiro in a likely two-week case. Miller to call back to advise of status | —Miller would be engaged before Judge Newcomer on 10/6/80 and listed before Judge Shapiro on 10/15/80, latter case likely to take 10 days |
| Date of 2d conversation—10/16/80 | —10/15/80 |
| Substance of Miller's statements—Matter before Judge Shapiro concluded, Miller to call back to advise whether Carrasquillo would change plea | —unspecified [but Miller's position is that 70-day period expired 10/14/80] |
| Date of 3d conversation—10/17/80 | — |
| Substance of Miller's statements—Carrasquillo will not plead guilty but would go to trial, Miller intends to file motion to dismiss on Speedy Trial Act grounds | — |

2. An analogous problem arose in *United States v. Wedalowski*, 572 F.2d 69 (2d Cir. 1978) where a notice of arraignment and then a second notice of arraignment postponing the date for seven days were sent to the defendant

on the same day and were signed by an Assistant United States Attorney. Under the local court rules, the Government had to be "ready for trial within six months from the date of arrest ..." or risk dismissal of the indictment. The second Circuit when considering the seven day delay wrote as follows:

It is argued for defendant (and apparently was believed by Judge Elfin) that the continuance was granted by the United States Attorney and not by the District Court. It is said that the United States Attorney determines the date of arraignment and then advises the District Court of his determination. This is an error. It is the Court which determines its own calendars, including when a defendant will be arraigned before the Court. The form of notice of arraignment (App. 7, 8) shows its issuance from the Court. It may be that in the Western District of New York an Assistant United States Attorney sometimes signs such notice for the Clerk and mails it out. We do not approve of such practice, if it existed, or of any practice appearing to allow one party, here the government, to grant a "continuance" which in theory and in fact must come from the Court. In the case at bar, when the Assistant United States Attorney signed and sent out the second notice adjourning the arraignment (App. 8), *he was not acting on his own authority but rather on behalf of the Court and on its authority.*

572 F.2d at 76 (emphasis added). Of course *Wedalowski* was not decided under the Speedy Trial Act.