**UNITED STATES of America**

v.

**Alphonso BROOKS, Appellant in No. 82–1265,**

**and**

**UNITED STATES of America**

v.

**Charles REED, a/k/a Bouloud Charles Reed, Appellant in No. 82–1270.**

**Nos. 82–1265, 82–1270.**

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 1982.

Decided Dec. 30, 1982.

Certiorari Denied April 4, 1983. See 103 S.Ct. 1526.

Steven A. Morley (argued), Asst. Defender, Defender Ass'n of Philadelphia, Philadelphia, Pa., for appellant Brooks.

Burton A. Rose (argued), Peruto, Ryan & Vitullo, Philadelphia, Pa., for appellant Reed.

Peter F. Vaira, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, James M. Becker (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before ADAMS and GARTH, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In these appeals, Alphonso Brooks and Charles Reed, the appellants, challenge their convictions for participating in a conspiracy to manufacture and distribute con-

* Honorable John F. Gerry, United States District Court for the District of New Jersey sitting by designation.

trolled substances. They raise two primary contentions: that their rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., were violated by the district court's *sua sponte* decision to grant a continuance, and that there was a fatal variance between the conspiracy charged in the indictment and that proved at trial. After considering these issues, and the appellants' other contentions, we conclude that all their claims are without merit and that the convictions should be upheld.

## I

The indictment in this case charges that a number of persons engaged in a single conspiracy to manufacture and distribute methamphetamine, a non-narcotic controlled substance, in violation of 21 U.S.C. § 846. One member of the group, Robert Barron, became a government witness and the other nine were indicted. Barron appears to have been the chief distributor. He received the drugs from two sources: from Reed, one of the appellants here, and from Rick Jones. Brooks, the other appellant, worked with Jones as a chemist, helping to manufacture the drugs and to obtain the needed supplies. The other defendants were distributors of the drugs; none of them has appealed.[1]

On August 5, 1981, the appellants and their seven co-defendants were indicted. The appellants were charged in the conspiracy count only. Five days after the indictment was filed, the defendants were arraigned. On September 8, counsel for Reed moved to extend the time for filing pre-trial motions. This motion was granted on September 29. On October 1, the court *sua sponte* ordered a further continuance, concluding that the "ends of justice" served by granting the continuance outweighed the interest of the defendants and the public in a speedy trial because of the complicated nature of the case and the fact that some of the defendants had not yet obtained counsel. A trial date of February 16, 1982 was

eventually set.[2] Prior to trial, counsel for both Brooks and Reed moved to have the case dismissed for violation of the Speedy Trial Act. These motions were denied by the district court, and the case proceeded to trial before a jury. Both Brooks and Reed were found guilty.

Brooks and Reed raise several challenges to their convictions. Although we have considered all of their claims, only two will be discussed in detail. They first argue that the court's *sua sponte* continuance deprived them of their rights under the Speedy Trial Act. Second, they allege that the proof adduced at trial did not establish that Reed was part of the same conspiracy as Brooks and Jones; rather, appellants claim that they were two separate and competing drug manufacturers. Inasmuch as the indictment charged a single, unified conspiracy, Brooks and Reed assert that this was a prejudicial variance which warrants setting aside their convictions.

## II

Since the defendants were arraigned on August 10, 1981, if no time were excluded between that date and the date of trial, the Speedy Trial Act would have required trial to commence no later than October 19, 1981 —seventy days from the date of the arraignment. *See* 18 U.S.C. § 3161(c). On October 1, 1981, the district court granted the continuance that is at issue here, and the trial did not begin until February 16, 1982—190 days after the defendants' first appearance in court. Brooks and Reed argue that the delay time caused by the continuance is not excludible under the Act, because the district court did not properly set forth its reasons for granting the continuance. Even if the court's statements explaining the delay do satisfy the statute's procedural requirements, the appellants further contend that the reasons set forth by the trial court are substantively insufficient to justify a continuance. If they are

---

1. Prior to trial, guilty pleas were entered by four of the defendants, and the government dropped charges against two others.

2. The court's original order did not specify when the trial would begin.

correct, the statute would make it necessary to dismiss the indictment against them. We reject both of their arguments, however, and hold that the delay caused by the continuance is properly excluded under the Act, and that the reasons given by the district court are sufficient.

Congress enacted the Speedy Trial Act to "give effect to the Sixth Amendment right to a speedy trial" by setting specified time limits after arraignment or indictment within which criminal trials must be commenced.[3] H.R.Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong., & Ad.News 7401, 7402. A defendant must be brought to trial within seventy days following his indictment or first appearance before the court, whichever occurs later. 18 U.S.C. § 3161(c).[4] If this deadline is not met, the Act requires the district court to dismiss the indictment, either with or without prejudice. 18 U.S.C. § 3162(a)(2). Certain periods of delay are excluded from the calculation of the seventy-day time limit, including "[a]ny period of delay resulting from a continuance ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The Act provides that the district court may grant such a continuance *sua sponte. Id.*

▮ The district court is required to set out its reasons for granting an "ends of justice" continuance on the record, either orally or in writing. 18 U.S.C. § 3161(h)(8)(A). If this is not done, the time is not excludible. *See United States v. Carrasquillo,* 667 F.2d 382, 385–88 (3d Cir. 1981); *United States v. New Buffalo*

*Amusement Corp.,* 600 F.2d 368, 375 (2d Cir.1979). The Act lists some of the factors the court is mandated to consider when deciding whether such a continuance should be granted:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> \* \* \* \* \* \*

18 U.S.C. § 3161(h)(8)(B).

Two purposes are served by the requirement that district courts set forth their reasons for granting an "ends of justice" continuance. First, Congress wanted to insure that a district judge would give careful consideration when balancing the need for delay against "the interest of the defendant and of society in achieving speedy trial." S.Rep. No. 1021, 93d Cong., 2d Sess. 39 (1974). Second, the requirement provides a record so that an appellate court may review the decision. *United States v. Molt,* 631 F.2d 258, 262 (3d Cir.1980). If a district court's statements do not comport with these two purposes, they are not sufficient to satisfy the statutory command that "reasons" be set forth "in the record of the case." 18 U.S.C. § 3161(h)(8)(A). Without properly explained reasons, the delay caused by a continuance is not an excludible item.

---

**3.** The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial ..." U.S. Const. amend. VI. The protections of the Act go beyond those secured by the amendment, since the Constitution does not require that a trial commence within a specified time. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

**4.** During the first year the Act was in effect, the period within which the defendant had to be brought to trial was 180 days. During the second year it was 120 days, and in the third year, eighty days. 18 U.S.C. § 3161(g). The Act originally provided that, after this three-year phase-in period, trials had to commence within sixty days. This section was amended in 1979 to establish the current seventy-day time limit.

A form has been adopted by the Eastern District of Pennsylvania that judges may use to record their reasons for granting continuances; the judge may place a check mark on the form next to one or more of three reasons justifying the decision. The form lists two statements which track the language of Sections 3161(h)(8)(B)(i) and (ii), and contains a third line, marked "other," which provides space for the judge to write in some alternative basis for granting the continuance. In the proceeding at issue here, the district court checked both of the pre-typed reasons and added no additional comments to the form.

The first reason printed on the form is "[t]he failure to grant such a continuance ... would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." This is one of the factors Congress insists that the court consider. It is, however, a highly subjective and extremely broad guideline. It supplies the appellate court with little or no indication of the factual basis which prompted the district judge to grant the continuance.[5]

A second reason is provided by the form: that "[t]he case taken as a whole is so unusual and so complex, due to the number of defendants or the nature of the prosecution and other complexity, that it is unreasonable to expect adequate preparation within the periods of time established." This provision is more helpful to a reviewing court than the first reason, since it does give some indication of the problems raised by the actual situation presented. Because the statement combines several factual concerns, however, not all of which may be relevant to the district court's decision in any given case, it still may not be sufficient, by itself, to provide clear enough explication of the district court's reasoning to enable an appellate court properly to review the decision to grant a continuance. For the reason set forth below, we need not reach the difficult question whether this statement alone is a sufficiently articulated "reason" to satisfy the statute.

In the present case, the form, when read together with the later statement made by the district court explaining in greater detail its reasons for granting the continuance, satisfies the requirements of the Act. Four months after the continuance was issued, the appellants each moved to have the indictment dismissed, alleging that the court had failed to comply with the provisions of the Speedy Trial Act. In a memorandum order dated February 9, 1982, the district court explained in great detail the basis for its initial decision. It emphasized that this was a complex case which alleged a drug manufacturing and distribution conspiracy involving nine people at various levels of production, and four substantive counts of possession and distribution at different times involving various members of the conspiracy. The court also noted that, at arraignment, not all defendants had yet secured counsel. In addition, it appeared that discovery had not been completed by the time the continuance was granted.

The memorandum opinion by the district court was not issued until after the seventy-day period for trial would have run, if the period of the continuance was not considered excludible time. Appellants contend that the district court cannot, after the seventy days has passed, justify previous periods of delay and thereby extend the Speedy Trial Act deadline. For this proposition, they rely on our opinion in *United States v. Carrasquillo,* 667 F.2d 382 (3d Cir. 1981). This reliance is misplaced. In *Carrasquillo,* the deputy court clerk, in attempting to accommodate the schedule of the defense attorney, delayed setting a trial date for the case. When the seventy day period had expired, the defense attorney filed a motion to dismiss for failure to comply with the Speedy Trial Act. It appears that it was at this point that the district judge first became aware of the lapsed time. The court then granted a retroactive

---

**5.** We need not reach the issue whether such a statement standing alone would suffice be-

cause, in our case, more appears.

"ends of justice" continuance for the period during which the defense attorney's other court appearances had made him unavailable for the trial of Carrasquillo. This Court held that a judge could not grant an "ends of justice" continuance *nunc pro tunc*, providing after the fact justification for unauthorized delays. Rather, we declared, the district judge must consider the matter at the outset and determine whether the "ends of justice" require that the trial be postponed.

Although the district court must decide initially whether to grant a continuance, we did not, in *Carrasquillo*, require that the reasons for the decision be entered on the record at the same time that the decision is made. The language of the statute does not specify when the court's findings must be recorded, and the purposes of the statute are satisfied by a subsequent articulation. The judge's later statements explaining his decision serve both to create a record for review and to demonstrate that he has given the matter the careful consideration which the Act requires. We therefore agree with our colleagues on the District of Columbia and Eighth Circuits that the Act does not require a contemporaneous recording of reasons. *United States v. Clifford,* 664 F.2d 1090, 1095 (8th Cir.1981); *United States v. Edwards,* 627 F.2d 460, 461 (D.C. Cir.) *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1980). Thus, in this case, we hold that the judge's memorandum opinion and his adoption of the two statements on the form, when taken together, are sufficient to satisfy the "reasons" requirement of the Speedy Trial Act.

■ Appellants argue that the trial court's actions, even if they comply with the "reasons" requirement, are factually insufficient to justify the continuance that was granted. The district court determined that the case was too complex to go to trial

within seventy days, and that additional time was also necessary because not all defendants had yet retained counsel. Our inquiry is limited to the question whether the district court abused its discretion in granting this continuance. *See United States v. Faison,* 679 F.2d 292 (3d Cir.1982); *United States v. Aviles,* 623 F.2d 1192 (7th Cir.1980). The district court relied on the following facts in making its determination: the indictment charged nine individuals with engaging in a three-year drug conspiracy spanning virtually all levels of production and distribution; the indictment detailed four separate substantive charges of possession and distribution of controlled substances by some members of the conspiracy; some defendants had not yet been able to retain counsel, and one attorney who had been retained had felt the need to move for an extension of time within which to file pre-trial motions. On the basis of this information, we cannot say that the judge abused his discretion in holding that the case was complex and required additional time for adequate preparation. Accordingly, we hold that the entire period of time covered by the October 1, 1981 "ends of justice" continuance was properly carved out from the calculation of the seventy days within which the Act requires the defendants to be brought to trial, and thus there was no violation of their Speedy Trial rights.[6]

### III

Brooks and Reed also argue that there was a prejudicial variance between the indictment and the proof that was advanced at trial. The indictment charged a single conspiracy, but the appellants claim that the evidence established that at least two conspiracies existed, one involving Jones and Brooks,[7] and another involving Reed.

---

**6.** To the extent that appellants base their claims on the Eastern District of Pennsylvania's 1980 "Plan for Prompt Disposition of Criminal Cases," we direct attention to Section II(10)(a) of the Plan which states: "Nothing in this plan shall be construed to require that a case be dismissed or a defendant released from

custody in circumstances in which such action would not be required by 18 U.S.C. §§ 3162 and 3164." (footnote omitted). It appears that the appellants did not raise the issue of the Eastern District Plan before the trial court.

**7.** Brooks also asserts that there was insuffi-

Appellants point to various statements in the record to support their claim, but their position appears to be based on the assertion that Jones and Reed were, at the time charged in the indictment, competitors rather than partners in the methamphetamine manufacturing business. Consequently, Brooks and Reed insist, they shared no common design or goal and therefore this cannot be viewed as a single conspiracy.[8] *United States v. Varelli,* 407 F.2d 735 (7th Cir.1969); *United States v. Boyd,* 595 F.2d 120 (3d Cir.1978); *United States v. Lester,* 282 F.2d 750 (3d Cir.1960) (quoting *Lefco v. United States,* 74 F.2d 66, 68 (3d Cir.1934)). After carefully reviewing the record, we conclude that there was sufficient evidence from which the jury could have found beyond a reasonable doubt that a single conspiracy existed.

■ A variance would occur if the evidence at trial proves the existence only of multiple conspiracies when the indictment has charged a single conspiracy. If the variance has affected substantial rights of the accused, it is prejudicial and the conviction must be reversed. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Since the issue of how many conspiracies the evidence proves is a question of fact to be decided by the jury, a federal appellate court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision.... [I]t is apparent that [a reversal] will be confined to cases where the prosecution's failure is clear." *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978) (citation and footnote omitted). *See United States v. Boyd,* 595 F.2d 120, 123 (3d Cir.1978).

■ The key witness connecting Reed with Jones and Brooks was Barron, the distributor who had become a government witness. He testified that Reed and Jones had, prior to the conspiracy, been partners in distributing heroin. This statement is undisputed. There is some conflicting testimony whether that relationship was severed prior to the beginning of the conspiracy. Barron purchased methamphetamine from both Reed and Jones several times during the period covered by the indictment, although he never saw the two manufacturers together. Barron also testified that he often purchased the drugs at a small store in Philadelphia that he believed was operated jointly by Jones and Reed, and it appears from his testimony that he bought methamphetamine from both of them at that location. He discussed the dealings he had with each of them with the other many times. Also, on at least one occasion, Barron went to Jones to purchase drugs and Jones sent him to Reed instead. Finally, Barron testified that during one

cient evidence connecting him to the conspiracy as Rick Jones' chemist. Our review of the record convinces us that such a claim is meritless. Raymond McGowan, a government witness, testified that he met twice with Brooks and Jones to discuss the purchase of chemicals necessary to make methamphetamine. At the conclusion of the second meeting, the three went to a nearby parking lot to conclude their sale. Jones rode with Brooks, and McGowan followed in his car. McGowan placed seven gallons of methylamine, a chemical used to make methamphetamine, in the trunk of the car Brooks drove and Jones then paid McGowan $1,000. McGowan also testified that he dialed the same telephone number to reach either Brooks or Jones. The number belonged to two women indicted as drug distributors. Also, according to a recorded conversation that Brooks had with McGowan and an undercover DEA agent, Brooks twice referred to "Rick." Later in the discussion, Brooks mentioned that he and an unnamed partner had had prior dealings with McGowan. The jury could reasonably have concluded, based on McGowan's prior testimony, that Jones was the unnamed partner.

8. Because we determine that the evidence is sufficient to support a finding that Reed and Jones acted together, we need not address appellants' questionable proposition that competitors cannot be co-conspirators. We note in passing, however, that the antitrust laws assume that such conspiracies can occur. *See, e.g., Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Trenton Potteries Co.,* 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927); *United States v. Joint Traffic Assn.,* 171 U.S. 505, 19 S.Ct. 25, 43 L.Ed. 259 (1898).

drug sale (involving an undercover DEA agent) at which Jones was present, another co-conspirator mentioned both Brooks and Reed as possible sources for chemicals they needed to manufacture methamphetamine.

While this evidence does not establish that Jones and Reed were actually partners, it is sufficient to sustain a finding that they were, in essence, "joint venturers." Each operated his own laboratory, but they shared a distribution network. Their "common goal" was to facilitate the sale of the entire supply of methamphetamine. This is not the same as two thieves who happen to use the same "fence," an arrangement which in *Kotteakos* was determined not to be a single conspiracy. In the "fence" situation, neither thief may be affected by the existence of the other, whereas it appears that the drug dealers here actually worked to assist each other's business.

In *United States v. Kenny*, 462 F.2d 1205 (3d Cir.) *cert. denied*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972), we upheld a single conspiracy conviction of both city and county employees charged with receiving kickbacks, even though each group actually extorted money only from contractors dealing with its political subdivision. The Court found that all the defendants nevertheless shared a common goal. It said, "The pattern of conduct reflected in the evidence is that of a determined group who repeatedly cooperated closely to achieve the common purpose of self-enrichment by extracting kickbacks." 462 F.2d at 1217. Although the crime is different in the present case, the motivation of the defendants was similar.

It is possible to read the evidence to suggest that the appellants acted independently, as they now contend. Our role, however, is not to say how we would have construed the testimony had we been the factfinder. Instead, we must ascertain whether, in the light most favorable to the government, there is substantial evidence in the record to support the jury's finding that a single conspiracy existed. We conclude that there is.

IV

Appellants mount a series of additional attacks on their convictions. Brooks claims that the district court erred in refusing to grant a continuance, and in charging the jury concerning multiple conspiracies. Reed challenges the district court's denial of his requests for a severance and the jury instruction on accomplice testimony. After giving careful consideration to each of these claims, we conclude that they are without merit. Accordingly, the convictions of Brooks and Reed will be affirmed.