863 F.2d 293
 UNITED STATES of America
v.
RIVERA CONSTRUCTION COMPANY.
Appeal of RIVERA CONSTRUCTION CO., INC., Appellant in 88-5165.
UNITED STATES of America
v.
Joseph RIVERA.
Appeal of Joseph L. RIVERA, Appellant in 88-5166.
 Nos. 88-5165, 88-5166.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 16, 1988.
Decided Dec. 15, 1988.
Rehearing and Rehearing In Banc Denied Jan. 19, 1989.
 
 Joseph H. Reiter, Kostos Reiter and Lamer, Edward F. Borden, Jr. (argued), Philadelphia, Pa., for appellants.
 Richard J. Schechter (argued), Marion Percell, Edna Ball Axelrod, Chief, Appeals Div., U.S. Attorney's Office, Newark, N.J., for appellee.
 Before BECKER, HUTCHINSON and SCIRICA, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 Appellants Joseph Rivera and Rivera Construction Company ("RCC") appeal from their convictions of various offenses involving a conspiracy to defraud the United States Department of Defense ("DOD"). Their principal contention is that their rights under the Speedy Trial Act, 18 U.S.C. Secs. 3161-3174 (1982), were violated by the district court's decision to order a continuance following disqualification of RCC's original trial counsel. We conclude that all of appellants' claims lack merit and we will affirm the convictions.I.
 
 
 2
 Under the supervision of the Small Business Administration ("SBA"), small and disadvantaged companies are provided with "set-aside" contracts. Pursuant to 15 U.S.C. Sec. 637(a), SBA nominates minority or "disadvantaged"[1] companies to undertake government contracts. Thereafter, the nominated company and the particular government agency negotiate a price for the work to be done.
 
 
 3
 RCC was founded in 1978 by Rivera, who became its president and principal shareholder. RCC was nominated by SBA for set-aside contracts and thereafter began to negotiate construction contracts with the Directorate of Engineering and Housing ("DEH") at Fort Dix, New Jersey. Before negotiating a contract, DEH would prepare its own cost estimate for the project for use as a guide in the negotiation. The DEH estimates were to be confidential.
 
 
 4
 In 1984, Rivera approached DEH employees to discover the DEH estimates for particular projects before the contract negotiations. By knowing DEH's estimates, RCC could bid the estimate price even though its own costs for the job might be substantially lower than the DEH figures.
 
 
 5
 Over the next year and a half, RCC approached a number of DEH employees with offers of cash and other gratuities in exchange for providing RCC with the confidential estimates. Chief among these were Noel Gormay, a DEH draftsman, and Kenneth Don, Chief of DEH's Contract Administration Branch. Rivera ostensibly hired Gormay to provide drafting support to RCC but, from late 1984 until early 1986, Gormay provided Rivera and RCC with at least eight confidential DEH estimates in exchange for total payments of approximately $3,000. RCC paid Don $3,000 and did renovations to Don's home free of charge. In exchange, Don increased by almost $30,000 (or approximately 50%) the DEH estimate for an upcoming contract in order to match RCC's price.
 
 
 6
 In April 1987, Rivera and RCC, along with RCC employees Luis and Anthony Rivera, were indicted on one count of conspiracy to defraud the United States and eleven counts of bribery. Rivera and RCC were also charged with attempted bribery and obstruction of justice. During the pre-indictment stage, all four defendants were represented by one attorney, Guillermo Bosch. After indictment, Bosch entered his appearance on behalf of RCC.
 
 
 7
 All four defendants were arraigned on May 11, 1987, starting the clock running for purposes of the Speedy Trial Act, 18 U.S.C. Sec. 3161(c). Trial was originally scheduled for July 8, 1987. However, on June 10, the government moved to disqualify Bosch from representing any defendant in the case. At a hearing on July 20, the district court granted the motion and continued the trial, finding that a continuance was necessary to allow new counsel for RCC to prepare its case.[2] The court entered a written order on July 29, 1987, postponing the trial until October 13, 1987.
 
 
 8
 On July 16, 1987, one of the defendants filed a motion to permit his counsel to interview certain witnesses. On July 30, the district court deferred ruling on the motion, and requested that the parties attempt to settle the matter informally before returning for a hearing. By letter dated August 5, the government informed the district court that the matter appeared to have been resolved and, absent new developments, there would be no need for a hearing. Nonetheless, the motion was not withdrawn and no order disposing of the motion was entered.
 
 
 9
 On October 8, 1987, all the defendants filed a joint motion to dismiss the indictment for violation of the Speedy Trial Act. At a hearing on October 13, 1987, the district court denied the motion, reiterating that the continuance had been necessary for RCC's new counsel to prepare its case and, therefore, that the elapsed time was excludible from the Speedy Trial Act pursuant to 18 U.S.C. Sec. 3161(h)(8)(B)(iv).
 
 
 10
 On November 11, 1987, after a jury trial, RCC and Rivera were convicted of all 14 counts of the indictment. A judgment of acquittal was entered for Luis and Anthony Rivera.
 
 
 11
 On December 30, 1987--after RCC's conviction, but almost two months before it was sentenced--the district court entered an order appointing a receiver for the corporation. At a hearing held January 5, 1988, the district court maintained the appointment, in order to prevent the illegal diversion of corporate funds.
 
 
 12
 On February 25, 1988, both Rivera and RCC were sentenced. Rivera was sentenced to ten years imprisonment on each bribery count and two years on each of the other counts, all concurrent terms, and was fined $1,500,000. RCC was fined $1,100,000. The judgment of sentence for RCC made no reference to the receivership.
 
 II.
 
 13
 Rivera and RCC contend that the continuance of the trial date until October 13, 1987 violated their rights under the Speedy Trial Act, 18 U.S.C. Secs. 3161-3174. Specifically, they argue that the district court did not place the reasons for ordering the continuance on the record until after the statutory period had expired and a motion to dismiss was filed, in violation of 18 U.S.C. Sec. 3161(h)(8)(A). The government responds that the district court placed sufficient reasons for the continuance on the record and, therefore, the period from July 30, 1987 until October 13, 1987 was excludible under 18 U.S.C. Sec. 3161(h)(8)(A). Alternatively, the government argues that the period from July 16, 1987 until October 13, 1987 was excludible, under 18 U.S.C. Sec. 3161(h)(1)(F), because during that entire period a motion was pending before the court for Anthony Rivera to interview witnesses.[3]
 
 
 14
 The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. Const. amend. VI. Congress enacted the Speedy Trial Act to "give effect to the Sixth Amendment right to a speedy trial" by setting specified time limits after arraignment or indictment within which criminal trials must be commenced. H.R.Rep. No. 1508, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Admin.News 7401, 7402. A defendant must be brought to trial within 70 days following his indictment or first appearance before the court, whichever occurs later. 18 U.S.C. Sec. 3161(c). If the trial does not commence within the 70-day period, the Act requires that the indictment be dismissed. 18 U.S.C. Sec. 3162(a)(2).
 
 
 15
 Certain delays in commencing the trial may be excluded from calculation of the 70-day period. Section 3161(h) provides an exclusive list of nine circumstances which warrant exclusion, United States v. Carrasquillo, 667 F.2d 382, 388 (3d Cir.1981), including "[a]ny period of delay resulting from a continuance ... if the judge granted such a continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."[4] 18 U.S.C. Sec. 3161(h)(8)(A). The district court may order such a continuance sua sponte but, in doing so, must set out its reasons for granting the continuance on the record, either orally or in writing. 18 U.S.C. Sec. 3161(h)(8)(A).[5] If the reasons are not placed on the record, the time is not excludible. United States v. Brooks, 697 F.2d 517, 520 (3d Cir.1982), cert. denied, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); United States v. Carrasquillo, 667 F.2d at 385-88.
 
 
 16
 Placing the reasons for an "ends of justice" continuance on the record serves two purposes:
 
 
 17
 First, Congress wanted to ensure that a district judge would give careful consideration when balancing the need for delay against "the interest of the defendant and of society in achieving speedy trial." S.Rep. No. 1021, 93d Cong., 2d Sess. 39 (1974). Second, the requirement provides a record so that an appellate court may review the decision. United States v. Molt, 631 F.2d 258, 262 (3d Cir.1980).
 
 
 18
 United States v. Brooks, 697 F.2d at 520. If the district court's reasons do not comport with these two purposes, they are not sufficient to satisfy the Act; without properly explained reasons, the delay is not excludible. Id.
 
 
 19
 Viewed in the totality of circumstances, we believe the district court made the requisite findings on the record and that those findings are supported by adequate evidence in this case. The district court balanced the interests of the public and of all the defendants and, when it ordered the continuance on July 20, 1987, it stated on the record that its reason for doing so was to allow the new counsel for RCC sufficient time to prepare his case:
 
 
 20
 We are bringing in new counsel representing a client, a client which may be a corporation, but has every right as your client has to independent and zealous representation. I am not bringing in a lawyer tomorrow, and putting the case on for trial the day after, because the corporation--I know from bitter experience if they lose they have a right to appeal to the Court of Appeals and say that they were shortchanged by reason of their representation, by reason of what occurred.
 
 
 21
 * * *
 
 
 22
 * * *
 
 
 23
 So that I am not going to be in a position where I am going to get a lawyer tomorrow and put the case on trial next week. I am going to give that lawyer sufficient, fair opportunity to prepare.
 
 
 24
 App. 427a-428a.
 
 
 25
 On July 29, 1987, the district court entered its Order for the continuance, in which it again specified its reasons:
 
 
 26
 [I]n order that new counsel for [RCC] may adequately familiarize himself with the case and prepare a defense, commencement of the trial shall be continued to October 13, 1987 at 9:00 A.M.
 
 
 27
 App. 88a-89a.
 
 
 28
 Finally, the district court placed its reasons for granting the continuance on the record a third time on October 13, 1987, when it denied the defendants' motion to dismiss. This time the court specified that time was excludible under Sec. 3161(h)(8)(B)(iv):
 
 
 29
 [A]t the time that [new RCC counsel] entered his appearance, I appreciate that everyone wanted to go to trial as soon as possible and I want to tell you gentlemen that no one wanted to go to trial sooner than me.
 
 
 30
 But I certainly was not going to permit [RCC] or any defendant to go to trial without adequate preparation, independent counsel, being aware that any trial which could have had adverse effects for the corporation if they were improperly prepared or inadequately represented could have been reversed on appeal or collaterally attacked.
 
 
 31
 The time that [new RCC counsel] came into the case to this day I meant to exclude, it was only an oversight that I failed to do so, and I am going to enter an order today excluding that time pursuant to Section 3161[h](8)(b)[iv]. I am excluding it since I believe it was necessary for this corporation to have that time with independent counsel for the purpose of adequately and properly preparing for trial.
 
 
 32
 App. 447a. The district court considered all of the competing interests before making its decision. The record is clear as to which interest tipped the balance and no party was misled.
 
 
 33
 Rivera and RCC contend that Mr. McBride, who took over as RCC's counsel, did not require the continuance in order to adequately prepare the corporation's defense. Appellants point to Mr. McBride's statement at the October 13 hearing on the motion to dismiss that he could have been prepared much sooner. App. 441a-442a. We do not find this argument convincing. The district court made clear its intention not only to try the case as quickly as possible, but its willingness to do so whenever RCC's new counsel, who turned out to be Mr. McBride, was ready to proceed.[6] Mr. McBride, aware of the entire situation when he entered his appearance on July 29, 1987, never informed the court he was prepared to proceed. His statement at the October 13 hearing was made after the fact and within the self-serving context of the motion to dismiss.
 
 
 34
 Rivera and RCC also cite our decision in United States v. Carrasquillo, 667 F.2d 382 (3d Cir.1981), for the proposition that a judge may not provide an after-the-fact justification for unauthorized delays in commencing a trial. We explained in United States v. Brooks, 697 F.2d at 522, however, that while Carrasquillo requires the district court to decide to grant a continuance before the period begins to run, it does not require the court to put its reasons on the record at that time. A subsequent articulation satisfies the purpose of the statute. Here, the district court not only decided on the record to grant a continuance before the delay, but articulated its reasons before the continuance. Furthermore, when denying the motion to dismiss in October, the district court gave the same reasons it gave in July. In this case, there was no after-the-fact justification.
 
 
 35
 Therefore, we hold that the district court satisfied the statutory requirements of 18 U.S.C. Sec. 3161(h)(8)(A) and, consequently, that the period from July 30, 1987 until October 13, 1987 was excludible under the Speedy Trial Act. In light of our holding, it is unnecessary to address the question of whether the period from July 16, 1987 until October 13, 1987 was excludible because of Anthony Rivera's then-pending motion to interview witnesses.
 
 III.
 
 36
 RCC also seeks review of the district court's appointment of a receiver for the corporation. Specifically, RCC contends that until a judgment was entered, the United States had no legal right in the corporation's property which would justify such a remedy.
 
 A.
 
 37
 After indictment in April 1987, RCC was suspended from receiving federal contracts pursuant to 48 C.F.R. Sec. 9.407-2 (1987). As almost all of RCC's work came from set-aside contracts, the corporation received virtually no new work after the indictment. Thus, by July of 1987, Rivera informed the district court that RCC was "just about out of business." App. at 388a.
 
 
 38
 On November 25, 1987--after the conviction of RCC and Rivera, but before their sentencing--RCC informed the government that it wanted to pay certain accounts. The amount exceeded $400,000, including $150,000 for payment of federal withholding taxes. App. at 132a-135a.
 
 
 39
 On December 16, 1987, with the matter of the payments still unresolved, the government moved for the appointment of a receiver for RCC. App. at 118a-130a. A hearing was scheduled for January 5, 1988, and a briefing schedule was established. App. at 860a. Six days before the hearing, on December 30, RCC asked the district court for permission "to pay close to $200,000 in taxes for the last quarter...." App. at 864a. Later that same day, the district court entered an order appointing a receiver for RCC.
 
 
 40
 At the hearing on January 5, the government presented evidence that RCC's debts exceeded its assets by several hundred thousand dollars and, indeed, that the balance of RCC's lone bank account was only $107,229.92. App. at 874a. The district court stated it had "great suspicions that money was being improperly used by the corporation" (App. at 865a) and questioned the request to pay federal withholding taxes for the last quarter of 1987:
 
 
 41
 This was, to me, unbelievable, since during the last quarter of '87 as I understood, through everything I heard, the corporation was not operational. None of the ... men of the corporation were doing any work. In order to pay taxes in that area, the corporation would have had to pay salaries well in excess of half a million dollars, so I became suspicious as to why the corporation would have to pay withholding and FICA taxes for the last quarter, when no work was being done by the corporation during that period of time. And that also was factored into my decision that I immediately appoint a receiver.
 
 
 42
 App. at 868a-869a. Realizing that any money that was left "stood in jeopardy of being dissipated" (App. at 865a), the district court maintained the appointment of the receiver. App. at 883a.
 
 B.
 
 43
 In seeking review of the district court's appointment of a receiver, Rivera and RCC contend that the issue was raised by their notices of appeal, which were filed February 25, 1988. Both notices of appeal, though, state merely that Rivera and RCC appeal from "the final judgment of conviction and sentence imposed." App. 1a-2a. Neither the district court's sentence for RCC nor the notices of appeal for either appellant refer to the appointment of the receiver.
 
 
 44
 Fed.R.App.P. 3(c) requires that "[t]he notice of appeal ... shall designate the judgment, order or part thereof appealed from." If a party does not satisfy the requirements of Rule 3, then the appellate court does not acquire jurisdiction over the undesignated issues. Torres v. Oakland Scavenger Co., --- U.S. ----, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988) ("although a court may construe the rules liberally in determining whether they have been complied with, it may not waive the jurisdictional requirements of Rules 3 and 4").
 
 
 45
 Where one order or judgment was "a step in the procedural progression" of a second order or judgment for which a timely notice of appeal has been filed, then in certain limited cases, the appeal from the latter judgment may be deemed to include the earlier judgment. Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir.1977). However, where the order or judgment upon which the appellant seeks review is neither directly nor indirectly referred to in the notice of appeal, then the issue is not fairly raised and the Court of Appeals does not acquire jurisdiction. Compare Elfman Motors, 567 F.2d at 1254 (in multi-defendant lawsuit, notice of appeal specifying judgments in favor of three defendants did not confer jurisdiction for Court of Appeals to review summary judgment granted in favor of two other defendants not identified in notice of appeal); Carter v. Rafferty, 826 F.2d 1299, 1304 (3d Cir.1987) (failure to name both petitioners in habeas corpus action in notice of appeal deprived Court of Appeals of jurisdiction with regard to unnamed petitioner), cert. denied, --- U.S. ----, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988); with Murray v. Commercial Union Ins. Co. (Commercial), 782 F.2d 432, 434-35 (3d Cir.1986) (where two counts of complaint were dismissed for failure to state a cause of action and then, subsequently, the third count was dismissed in summary judgment, notice of appeal from summary judgment fairly read to include all three counts of complaint as none could be appealed until final judgment entered on all three and parties had briefed all three issues); Gooding v. Warner-Lambert Co., 744 F.2d 354, 357 n. 4 (3d Cir.1984) (where notice of appeal referred only to order "docketed July 7," but one claim dismissed January 4 could not be appealed until order on second claim July 7, and parties briefed and argued both claims, notice of appeal effectively raised both claims); United States v. Certain Land in the City of Paterson, N.J., 322 F.2d 866, 869 (3d Cir.1963) (where notice of appeal specified order denying motion to amend prior order, notice held to include prior order).
 
 
 46
 In this case, the appointment of a receiver was not a step in the procedural progression that culminated in the conviction and sentence from which Rivera and RCC filed their notice of appeal. Rather, it was an order collateral to the criminal proceedings. We also note that appellants first raised the receivership issue in their supplemental brief filed more than three months after the notice of appeal. Finally, appellants never responded to the government's request under Fed.R.App.P. 10(b)(3) to specify what issues would be raised on appeal. Cf. Foman v. Davis, 371 U.S. 178, 181, 83 S.Ct. 227, 229, 9 L.Ed.2d 222 (1962) (appeal permitted where intent to seek review of order was "manifest," and appealing party informed both court and adversary that order was being challenged).
 
 
 47
 We find that Rivera and RCC, at the time they filed their notice of appeal, did not intend to seek review of the appointment of the receiver and now request review of the appointment out of time. As no proper notice of appeal was ever filed on the issue, we lack jurisdiction to decide it.
 
 IV.
 
 48
 Rivera and RCC raise several other, less complicated issues: 1) that the district court erred in not immunizing Don as an unindicted co-conspirator and, failing that, that it erred in refusing to admit statements made by Don to the government pursuant to Fed.R.Evid. 803(24) and 804(b)(5); 2) that the district court admitted character evidence in violation of Fed.R.Evid. 404(b); 3) that the district court erred in excluding a document which purported to be a government estimate, but which appellants never authenticated; 4) that hearsay testimony elicited from a witness and to which the district court immediately directed two curative instructions, requires a retrial; 5) that their right to an impartial jury under the Sixth Amendment was violated by the district court's refusal to conduct individual voir dire of jurors regarding prejudice against Hispanics; and 6) that the district court erred in denying them access to statements by government witnesses, to which they were entitled under either the Jencks Act, 18 U.S.C. Sec. 3500, or under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We have considered each of these contentions and find that all lack merit.
 
 V.
 
 49
 For the reasons discussed, the convictions of Rivera and RCC will be affirmed.
 
 
 
 [1]
 "Socially disadvantaged individuals are those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities." 15 U.S.C. Sec. 637(a)(5) (1988 Supp.)
 
 
 [2]
 Appellants concede that, in light of the Supreme Court's opinion in Wheat v. United States, --- U.S. ----, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the district court's decision to disqualify Bosch cannot be challenged. Appellants' Brief at 4 n. 5
 
 
 [3]
 The standard of review of a continuance granted pursuant to Sec. 3161(h)(8) of the Speedy Trial Act depends upon what step in the district court's analysis we are reviewing. Where we review the district court's interpretation of the statute, it is a question of law and, therefore, subject to plenary review. Chrysler Credit Corporation v. First National Bank and Trust Company of Washington, 746 F.2d 200, 202 (3d Cir.1984). If the district court's factual conclusions are at issue, then a clearly erroneous standard is appropriate. United States v. Theron, 782 F.2d 1510, 1512 n. 1 (10th Cir.1986); United States v. Nance, 666 F.2d 353, 356 (9th Cir.), cert. denied, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982). Finally, when the district court grants a continuance after a proper application of the statute to established facts, then an abuse of discretion standard is applied. United States v. Brooks, 697 F.2d 517, 522 (3d Cir.1982), cert. denied, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); United States v. Theron, 782 F.2d 1510, 1512 n. 1 (10th Cir.1986); United States v. Pringle, 751 F.2d 419, 429 (1st Cir.1984)
 
 
 [4]
 The right to a speedy criminal trial belongs not just to the defendant, but to the public as well. Carrasquillo, 667 F.2d at 389 (quoting H.R.Rep. No. 1508, 93d Cong., 2d Sess. 15)
 
 
 [5]
 The Act lists some of the factors which the district court must consider when deciding to grant an "ends of justice" continuance, including "[w]hether the failure to grant such a continuance ... would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. Sec. 3161(8)(h)(B)(iv)
 
 
 [6]
 At the hearing held on June 29, 1987, the District Court made the following statement on the record:
 If Mr. Bosch withdraws and [RCC] is represented by new counsel, who comes in and says that they have had enough opportunity, and they are independent counsel, conflict-free, and independently represent [RCC], without any conflict, ... then I will start this case immediately....
 App. 340a.