*426 OPINION OF THE COURT
SCIRICA, Chief Judge.
Appellant Kevin Mayfield was tried by a jury on charges of transporting minors with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a); conspiring to transport minors with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(e); and advertising child pornography, in violation of 18 U.S.C. § 2252A(a)(3)(B).
At trial, the government presented evidence that Mayfield and his associate, Cas-san Coward, drove J.B. and A.B.[1] — sisters who were 16 and 14 years old, respectively — from Pennsylvania to New Jersey. Mayfield rented a room at a motel in New Jersey, and took pictures of J.B. posing nude. The next day, Mayfield took J.B. to a different motel in New Jersey. On that day, an advertisement titled “Vanilla Treat — w4m—21” was posted to the Craig-slist website from an internet protocol (“IP”) address registered to Mayfield’s father. The advertisement contained a nude, sexually explicit photograph of J.B., along with a phone number for a cell phone that Mayfield had given her when they arrived in New Jersey. Thereafter, J.B.’s phone rang several times, and May-field told her “to charge $150 for a half hour, $175 for an hour.” J.B. testified she did not answer the calls and eventually told Mayfield she wanted him to take her home. He initially refused because she “didn’t make money” by “having sex,” but later took her to Philadelphia, Pennsylvania.
A.B. testified that Coward rented a room at another motel and asked A.B. to be photographed and appear on Craigslist for prostitution. A.B. agreed and Coward took nude pictures of her with a digital camera and uploaded them to a laptop computer. On the same day, an advertisement titled “College Cute — w4m—18” was posted to Craigslist. The advertisement contained nude pictures of A.B. along with a phone number for the cell phone Coward purchased for A.B. She received five or six calls on it, two or three of which she answered. A.B. met and had oral sex with two of the individuals who called and charged each one $200, based on the instructions from Coward. She was eventually arrested by undercover detectives who had accessed the Craigslist advertisement.
A jury found Mayfield guilty on all three charges. The District Court sentenced Mayfield to three concurrent terms of 200 months imprisonment, required Mayfield to serve a life-term of supervised release, and imposed a $500 fine. Mayfield appeals the convictions, arguing the District Court erred in (1) denying his motion to dismiss based on pre-indictment and pre-trial delays in violation of the Speedy Trial Act, 18 U.S.C. §§ 3161(b), 3161(c)(1); and (2) denying his motion to suppress statements he made at two pre-trial proffer sessions. We will affirm.[2]
I.
The Speedy Trial Act limits pre-indictment delay by requiring “[a]ny information or indictment charging an individual with the commission of an offense [to] be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.” 18 U.S.C. § 3161(b). The Act also limits pre-trial delay by requiring “the trial of a defendant charged [to] commence within seventy days from the filing date ... of the information or indictment,” or *427 from the date of first appearance in court, “whichever date last occurs.” 18 U.S.C. § 3161(c)(1). If the time limitations of the Act are not satisfied, the charges must be dismissed. 18 U.S.C. § 3162(a).
Certain enumerated types of delays are “excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence.” 18 U.S.C. § 3161(h).[3] Specifically, any period of delay “resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion” is excluded from calculating pre-indictment and pre-trial periods. 18 U.S.C. § 3161(h)(1)(D). The Act also excludes “[a]ny period of delay resulting from a continuance granted by any judge ... at the request of the defendant or his counsel ... if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.” 18 U.S.C. § 3161(h)(7)(A). Such “ends of justice” continuances require that the “court set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.” Id.
A.
Mayfield argues that pre-indictment delay violated his statutory right to a speedy trial. He was arrested on July 10, 2007, pursuant to a federal criminal complaint charging him under 18 U.S.C. § 2423(e) with conspiracy to transport minors in interstate commerce with the intent that they engage in prostitution. On October 9, 2007, a grand jury returned a three-count indictment against Mayfield, charging the same conspiracy offense alleged in the criminal complaint, as well as an underlying substantive violation of 18 U.S.C. § 2423(a), and pandering or advertising of child pornography, in violation of 18 U.S.C. § 2252A(a)(3)(B). Mayfield contends the passage of approximately 90 days between his arrest and the indictment violated his rights under the Speedy Trial Act, 18 U.S.C. § 3161(b).
On July 10, 2007, Mayfield was brought before a magistrate judge for the initial appearance. The court appointed him counsel, Troy Archie, Esq. Mayfield then waived his right to a preliminary hearing. On July 24, 2007, Archie, on May-field’s behalf, consented to continue the time for filing an indictment or information under the Speedy Trial Act for sixty days to allow for review of informal discovery for the purpose of entering plea negotiations. Accordingly, the court issued an “ends of justice” continuance order excluding the time from August 9, 2007 through October 9, 2007 under the Speedy Trial Act. Because the continuance order was entered within the 30-day statutory period, and the remainder of the pre-in-dictment time was excluded by the order under § 3161(h)(7)(A), the indictment complied with the Act.
Nevertheless, Mayfield later moved to dismiss the indictment, arguing that he did not authorize his attorney to request or consent to a continuance. The District Court denied the motion.[4] It did not *428 abuse its discretion in doing so because the statute explicitly allows for a continuance “at the request of the defendant or his counsel.” 18 U.S.C. § 3161(h)(7)(A) (emphasis added). Archie, Mayfield’s appointed counsel, requested a continuance and consented to the continuance order in writing. While Mayfield contends Archie was not his counsel beyond the initial appearance, the record supports the District Court’s factual finding that Archie was Mayfield’s attorney at the time the continuance order was entered. At Mayfield’s initial appearance, the court appointed Archie “to represent [Mayfield] until further order of the Court.” The court instructed Mayfield that if he retains his own counsel, “that counsel should contact Mr. Archie and then Mr. Archie will let the Court know or [the] new counsel will let the Court know.” No new counsel was substituted until Mayfield hired a private lawyer, Mark S. Greenberg, Esq., in September 2007. Moreover, contrary to Mayfield’s assertions, the record indicates he believed Archie was still acting as his defense attorney at the time the continuance order was entered — e.g., on July 30, 2007, Mayfield sent a letter to Archie inquiring about the status of his case. In sum, Mayfield cannot validly complain his statutory speedy trial rights were violated when his counsel requested and consented to the continuance order. See United States v. Fields, 39 F.3d 439, 443 (3d Cir.1994) (noting that arguments for dismissal “based on continuances that [defendant’s] own attorney sought” are disturbing); United States v. Lattany, 982 F.2d 866, 883 (3d Cir.1992) (“Defendants cannot be wholly free to abuse the system by requesting [ (h)(7) ] continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted.”).
B.
Mayfield next argues his statutory right to a speedy trial was violated by pretrial delay. On November 1, 2007 — 23 days after the indictment was returned— the District Court, at Mayfield’s request, entered an “ends of justice” continuance extending the deadline for filing pretrial motions until January 18, 2008, to allow Mayfield additional time to review discovery and prepare pre-trial motions. The continuance order excluded time from November 1, 2007, through January 18, 2008, for purposes of the Speedy Trial Act. Mayfield filed a number of pre-trial motions, the last of which the court decided on April 11, 2008. On May 7, 2008 — 26 days after the last motion was decided— the District Court held a status conference for the purpose of setting a trial date. At the conference, Mayfield’s counsel at the time, Mark S. Greenberg, Esq., informed the court that Mayfield had become dissatisfied with his representation and might not be prepared to proceed to trial within a week. The court granted Mayfield’s request to dismiss Greenberg and ordered the parties to appear for another status conference on June 2, 2008. Later the same day, the court appointed Mark W. Catanzaro, Esq. to represent Mayfield. On June 3, 2008, a day after the second status conference, the court, at Mayfield’s *429 request, entered an “ends of justice” continuance order, extending the time for filing any additional pretrial motions until July 7, 2008 to allow Mayfield additional time for discovery, research, pre-trial motions and evidentiary hearing regarding the use of his proffer statements at trial. The order excluded the period from June 2 through September 22, 2008.
On August 22, 2008, Mayfield filed a motion to dismiss the indictment with prejudice, arguing his statutory right to a speedy trial was violated because more than 70 days elapsed from filing of the indictment — 23 days between October 9 and November 1, 2007 (the period from filing of the indictment to the first continuance order) and 52 days between April 12 and June 2, 2008 (the period from disposition of the last motion to filing of the second continuance order).[5] On September 10, 2008, the District Court denied the motion, finding that Mayfield’s request for new counsel on May 7, 2008, constituted a request for a continuance that justified exclusion of time between May 7 and June 2 in the interests of justice. The court then entered a formal order confirming it had granted an “ends of justice” continuance on May 7, 2008. Mayfield now argues that the September 10, 2008 order was an improper after-the-fact justification of the May 7 continuance.
The Speedy Trial Act requires the court granting an “ends of justice” continuance to “set[ ] forth, in the record of the ease, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.” 18 U.S.C. § 3161(h)(7)(A). If the reasons are not placed on the record, the time is not ex-cludable. United States v. Brooks, 697 F.2d 517, 520 (3d Cir.1982); United States v. Carrasquillo, 667 F.2d 382, 385-88 (3d Cir.1981). Although the Act requires the “court to decide to grant a continuance before the period begins to run, it does not require the court to put its reasons on the record at that time.” United States v. Rivera Constr. Co., 863 F.2d 293, 297 (3d Cir.1988). “A subsequent articulation satisfies the purpose of the statute.” Id.
In this case, the record reflects the District Court’s decision to grant an “ends of justice” continuance on May 7, 2008. In response to Mayfield’s request to dismiss Greenberg, the court explained: “[N]ow you’re going to have a new attorney assigned to you to represent you, that new attorney is going to take time and is going to need time to get up to speed on your case. And that all takes time, which will toll the Speedy Trial clock. And I want to make sure you understand that.” May-field confirmed his understanding and agreed to the delay. The court then discussed the new date for a status conference with the Assistant U.S. Attorney, who suggested a June date because “[Defendant] doesn’t have an attorney ...; the clock isn’t running, he is not prepared, he the defendant is not prepared to go to trial, he does not have a lawyer.” The court agreed and scheduled a status conference for June 2, 2008.
Accordingly, the record demonstrates that on May 7 the court granted a continuance and articulated the reason for it — to accommodate Mayfield’s request to change lawyers. The District Court correctly held that Mayfield’s subsequent motion to dismiss the indictment on speedy trial grounds lacked merit. Although the court did not enter a formal order on May 7, the reasons for the continuance were on the record. Moreover, “[a] subsequent articu *430 lation” of the reasons for the continuance in the formal order entered on September 10, 2008, “satisfies the purpose of the statute.” Rivera Constr. Co., 868 F.2d at 297. Accordingly, the September 10, 2008 order did not constitute an after-the-fact justification.[6]
II.
Mayfield also contends the District Court erred in denying his motion to suppress the statements he made in two proffer statements. On October 11, 2007, Mayfield sent letters to the prosecutor and his attorney expressing his desire to cooperate with the Government. His attorney at the time, Greenberg, arranged a proffer session with the Government. Before the interview, the prosecutor provided May-field with a written agreement, outlining the terms and conditions for the proffer session. Greenberg discussed these parameters with Mayfield. At the beginning of the proffer session, the prosecutor discussed how the statements made during the interview could be used at trial. The agreement stated that the Government would be able to make derivative use of Mayfield’s statements and introduce them at trial for impeachment purposes.[7] Both Mayfield and his counsel signed the agreement. On the following day, Greenberg sent a copy of the executed agreement to Mayfield.
During the first interview, on October 29, 2007, Mayfield made admissions involving his role in the charged offenses, including taking the victim to New Jersey for purposes of prostitution. On November 19, 2007, he appeared for a second proffer session, at which he made additional admissions and provided more information.
After discharging Greenberg, Mayfield moved to suppress the statements he had made to the Government during the proffer sessions. He alleged that Greenberg coerced him into signing the proffer agreement, never went over its terms, and did not explain that the statements made during the proffer sessions could be introduced as impeachment evidence. The District Court conducted an evidentiary hearing and denied the motion. The court found that Mayfield signed the agreement knowingly and voluntarily after having the agreement explained to him by his own lawyer and by the prosecutor. The court also found it significant that Mayfield returned for a second proffer session after receiving a copy of the fully executed agreement from his attorney. Mayfield now argues that his waiver was invalid because it was not knowing, voluntary and intelligent.[8]
*431 “[A]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty” are not admissible against the defendant who “was a participant in the plea discussions.” Fed.R.Evid. 410; see also Fed.R.Crim.P. 11(f) (providing that the admissibility of any plea, plea discussion, or any related statement is governed by Rule 410). But a defendant may waive the protections afforded by the rule, so long as the waiver is knowing and voluntary. United States v. Mezzanatto, 513 U.S. 196, 210, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995); United States v. Hardwick, 544 F.3d 565, 569-70 (3d Cir. 2008), cert. denied, — U.S. —, 129 S.Ct. 1386, 173 L.Ed.2d 638 (2009). The Government bears the burden of showing, by a preponderance of the evidence, that the waiver was voluntary and knowing. Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). “The inquiry has two components. First, the waiver must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.” United States v. Velasquez, 885 F.2d 1076, 1084 (3d Cir.1989) (internal quotation marks omitted).
The record demonstrates Mayfield waived the protections of Rule 410 knowingly and voluntarily. The proffer sessions were arranged at his request— nothing in the record supports Mayfield’s contention that he was intimidated, coerced or deceived. The proffer agreement was provided to Mayfield in advance and explained by his own attorney and the prosecutor. Mayfield signed the agreement. Notably, after receiving a copy of the executed agreement, Mayfield appeared for a second interview and provided additional information. The terms of the agreement unambiguously provided for use of Mayfield’s statements on cross-examination and “to rebut any evidence or arguments offered on [his] behalf.” Accordingly, the District Court did not err in denying Mayfield’s motion to suppress the statements made during the two interviews based on its finding that Mayfield knowingly, voluntarily and intelligently waived the protections of Rule 410.[9]
III.
For the reasons discussed, Mayfield’s convictions will be affirmed.

. Because the victims were minors, we refer to them by their initials.

. The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction over the challenges to the conviction under 28 U.S.C. § 1291.

. The Judicial Administration and Technical Amendments Act of 2008, Pub.L. 110-406, 122 Stat. 4291, 4294, renumbered subparts of § 3161(h) by deleting obsolete cross-references to the Narcotic Addict Rehabilitation Act. None of the provisions at issue in this case were otherwise altered. In this opinion, we provide the new citations.

. Our review of the District Court's interpretation of the Speedy Trial Act is plenary. United States v. Rivera Constr. Co., 863 F.2d 293, 295 n. 3 (3d Cir.1988). But "[i]f the *428 district court's factual conclusions are at issue, then a clearly erroneous standard is appropriate.” Id. “Finally, when the district court grants a continuance after a proper application of the statute to established facts, then an abuse of discretion standard is applied.” Id. "We accept the ultimate factual determination of the fact-finder unless that determination is either '(1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.’” Frett-Smith v. Vanterpool, 511 F.3d 396, 400 (3d Cir.2008) (quoting Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir.1972)).

. It is undisputed that a period from January 18, 2008 (expiration of the first continuance order) through April 18, 2008 (disposition of tlie pre-trial motion) was excluded under 18 U.S.C. § 3161(h)(1)(D).

. Mayfield argues that the District Court itself admitted that no continuance was granted on May 7 because in its June 3, 2008 continuance order, it specified that “one previous speedy trial order” was granted. However, viewed in the totality of circumstances, the District Court's reference to one previous speedy trial order refers to the one formal order entered on November 1, 2007.

. The agreement stated in relevant part:
1. Should your client be prosecuted, no statements made by your client during the interview will be used against your client in the government's case-in-chief at trial or for purposes of sentencing, except as provided below.
3. The government may make derivative use of and may pursue any investigative leads suggested by any statements made or other information provided by your client, and may use the evidence or information obtained therefrom against your client in any manner.
4. The government may use your client’s statements and any information provided by your client to cross-examine your client and to rebut any evidence or arguments offered on your client’s behalf.

.Our review of the District Court's finding that Mayfield's waiver was voluntary, knowing and intelligent is plenary, but we are required to accept its factual findings unless *431 they are clearly erroneous. United States v. Sriyuth, 98 F.3d 739, 748 (3d Cir.1996).

. Mayfield's argument that the District Court erred in permitting the Government to use Mayfield's proffer in the absence of his testimony is without merit. During the opening statement at trial — after the District Court denied Mayfield's motion to suppress the statements — Mayfield took the position contrary to statements made during his first proffer session by denying that he had taken the victim to New Jersey for purposes of prostitution. Therefore, Mayfield made a knowing strategic choice to trigger the waiver provision of the proffer agreement, allowing the prosecution to introduce the conflicting statements.